DENTON v. MORGAN. (No. 6811.)

(Supreme Court, Appellate Division, First Department. February 11, 1915.)

1. MASTER AND SERVANT (§ 278\*)—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE—NEGLIGENCE—DISCOVERY OF DEFECT.

In an action for personal injuries to one helping to load a machine upon an express wagon caused by the breaking of a defective chain on the wagon, evidence *held* insufficient to support the finding that the defendant was negligent for not discovering the defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.\*]

2. MASTER AND SERVANT (§ 88\*)—INJURIES TO SERVANT—EXISTENCE OF RELATION—"EMERGENCY EMPLOYÉ."

An employé of a gas company, who sent to an express company for a wagon on which to ship a machine destined for his company, and who at the request of the driver of the wagon assisted in loading the machine thereon, and was thereby injured, was engaged in the business of his regular employer, and was not an "emergency employé," that is, one requested to render assistance by the servant of another, who was intrusted with the particular task, for which he did not have sufficient help available, and the express company is not liable as an employer for his injuries.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.\*

For other definitions, see Words and Phrases, Second Series, Emergency Employé.]

Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by Edward A. Denton against Reginald H. Morgan, Jr., as Treasurer of the United States Express Company. Judgment for the plaintiff, and defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Branch P. Kerfoot, of New York City, for appellant.
George F. Hickey, of New York City, for respondent.

INGRAHAM, P. J. The plaintiff in this action was in the employ of the Consolidated Gas Company, which was to install some machinery in an exhibition at Atlantic City. To accomplish this purpose, the gas company had purchased machinery of the Ingersoll-Rand Company, a corporation doing business in the city of New York. The plaintiff started with a motor truck on October 13, 1912, and stopped at the Ingersoll-Rand Company to load the machinery purchased. When he got there he found the machinery too bulky to be loaded upon his truck, and so the defendant was telephoned for to come and get this machinery and ship it to Atlantic City. Plaintiff and the employés of the Ingersoll-Rand Company waited until the wagon of the defendant came to ship this machinery. The machinery and the crate in which it was packed weighed 1,400 pounds and was heavier than two men could handle. There were but two men upon defendant's express wagon. Defendant's driver, after giving to the Ingersoll-Rand

Company a receipt for the shipment, attempted to load this crate upon the express wagon.

Defendant's evidence tended to show that the driver stated that the defendant's wagon was not proper to ship such freight on, and that he said that he would go back to defendant's office and send a proper truck for that purpose, but that the Ingersoll-Rand employés, wishing to close up the shop, insisted that this crate should be loaded on this wagon and offered to help. There is evidence of the plaintiff tending to deny this statement. It is testified to by the plaintiff that the driver asked those interested in the shipment to give him a hand in helping to load the crate upon the wagon that had been produced for the shipment, and that the employés of the Ingersoll-Rand Company and the plaintiff undertook to help get the crate upon the express wagon. While engaged in this work a chain which supported the tailboard of the express wagon gave way, the crate rolled over, and the plaintiff was injured.

[1] It seems to have been conceded, and I think properly, that unless plaintiff could be stated to be in the employ of the defendant at the time of the accident there is no evidence to justify a finding of defendant's negligence. I am inclined to think, upon this testimony, that a finding that defendant was negligent even as against an employé would be against the weight of evidence. The evidence is undisputed that this wagon was new, had been purchased about six months before from a manufacturer well known in the trade, that this chain which broke had been painted before it was delivered to the defendant, and that the break was occasioned by a fault in the welding of the chain, which had been placed upon the wagon before delivery to the defendant; and there is no evidence to justify a finding that by any ordinary means of inspection such fault could have been discovered after the chain had been painted, and it is quite clear from the evidence that, had this fault not existed, the accident would not have happened.

[2] The basis, however, upon which plaintiff seeks to hold the defendant as his employer is that plaintiff was what is called an "emergency employé." This "emergency employé" proposition is based upon the theory that where an employer charges his employé with the performance of a certain duty, and it appears that the force available to perform these duties is not sufficient, or an emergency occurs which requires assistance for the employé to perform the duties with which he is charged, he is impliedly authorized to call on others to assist him, and they thereby become employés of the original employer, and the employer is responsible for their negligence under such circumstances, and assumes toward them the same obligations as to the regular employés. But I do not think that the facts in this case bring it within this principle. Here plaintiff and the Ingersoll-Rand Company and defendant were all engaged in shipping this crate to Atlantic City. Defendant had received a call to send a wagon to ship this machinery, but when the wagon got there with but two men it was found that the article to be shipped was of a weight and size which made the wagon improper, and that the two men who had been sent could not load the wagon. Both the plaintiff and the Ingersoll-Rand people were

engaged in this shipment and were interested in having the goods promptly shipped. They were not outside persons called in by the defendant's employés to help them perform some duty imposed upon them by the defendant. The plaintiff and the Ingersoll-Rand people were, according to plaintiff's testimony, asked to give the driver a hand in loading this crate upon the wagon. In performing that work they were not acting on behalf of the defendant, but as much on behalf of the shippers of the crate. They were all engaged in the work of shipping this crate to Atlantic City. Plaintiff was a representative of the gas company, which had purchased the machinery and was engaged in having it shipped to Atlantic City. The Ingersoll-Rand people had sold the machinery to the gas company and were shipping it at its request. And when the driver of the express company requested plaintiff and the employés of the Ingersoll-Rand Company to assist him in loading the crate upon the wagon, it was not as an "emergency employé" or other employé of the defendant, but as a man engaged in making a shipment, and as much for their benefit as for the defendant's benefit. There was no evidence that it was the duty of the express company to load this crate upon its wagon, nor that it was bound to supply the labor necessary to put it upon the wagon, and I do not see that it assumed that duty. It was therefore apparent that the two men furnished by the express company were insufficient to load this crate, and the driver had the alternative of returning to the defendant's offices for additional assistance or for a proper truck, or to request the shipper or its employés to assist him in loading the wagon. Such request was not, I think, at all analogous to the cases upon which plaintiff relies, where it is held that an outsider, requested by an employé to assist him in the performance of his duties, becomes an "emergency employé," but is a case in which the shipper and the express company unite in loading the wagon and making the shipment, and in which case the employment was not by the express company.

I think, therefore, that the defendant's motion to dismiss the complaint, made at the close of the case, should have been granted, and that the judgment, therefore, should be reversed, and the complaint dismissed, with costs to the appellant, and judgment directed accordingly.

LAUGHLIN, SCOTT, and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). I think the judgment should be affirmed. The Ingersoll-Rand Company had sold the machine to the gas company, and was not shown to have the slightest interest in its shipment. The driver's alleged desire to secure a different kind of conveyance strikes me as of no importance. The strength of the wagon that was sent was not questioned at the trial, unless it be in the matter of the tailboard chain, which in sound condition was shown to have had a tensile strength of nearly four times the weight of the machine to be shipped. So far as I can see, the only superiority of the truck the driver proposed to substitute lay in the fact that it had a winch, which might have facilitated loading, but would have added

nothing to safety. But inasmuch as concededly he waived his objection to the use of the wagon, if the testimony of defendant's driver that he sought to secure a more appropriate vehicle was of any materiality, it is sufficient that his statement was contradicted and his credibility was for the jury.

There was no duty resting on the employés of either the Ingersoll-Rand Company or the gas company to assist in the loading. Defendant had accepted delivery on the floor of the former company, and as evidence thereof had given its receipt to plaintiff, representing the gas company. Defendant's legal duty to load was then fixed, and this duty plaintiff neither waived nor assumed any responsibility for, as is shown by the testimony of Dougherty, who swore that defendant's driver alone bossed the loading. Whether the facts established an emergency, as defined by the trial court, whether plaintiff was a volunteer, and whether the defect in the chain was ascertainable by reasonable inspection, were all questions for the jury on conflicting evidence.