## KRULL v TRIANGLE DAIRY, INC

Ohio Appeals, 7th Dist, Mahoning Co

No 2429. Decided Nov 18, 1937

W. L. Countryman, Youngstown, for appellee.

Harrington, Huxley & Smith, Youngstown, for appellant.

# OPINION

By NICHOLS, J.

Victor J. Krull, a minor, by his father and next friend, William J. Krull, brought his action against Triangle Dairy, Inc., for damages alleged to have been received by him September 18, 1935, when he was thrown or fell from the truck of the defendant company which was then being operated by Joseph P. Devaney, a truck driver for Triangle Dairy, Inc.

The cause is in this court on appeal on questions of law from the judgment of the Court of Common Pleas of Mahoning County, wherein Victor J. Krull recovered a judgment in the amount of $1,000.00 against Triangle Dairy, Inc.

Victor J. Krull, a boy about fifteen years of age, sought and obtained employment from Triangle Dairy, Inc., as a sorter of milk bottles, for which he was paid fifty cents per day. His work as a sorter of bottles took him about three hours each day, from eleven A. M. until about two P. M. September 18, 1935, while Victor J. Krull was an employee of Triangle Dairy, Inc., as a sorter of bottles, he and another lad, then about thirteen years of age, went upon the company's truck with Joseph P. Devaney to deliver some ice cream for the dairy company. They left the dairy company's place of business, as testified to by Victor J. Krull, at about two-thirty or three o'clock in the afternoon, and after delivering the ice cream and picking up some empty cans which were placed in the body of the truck, Victor J. Krull and the other lad, George Anderson by name, got in the truck in the rear of the driver's cab. While the truck was being driven by Devaney through what is known as Bears Den Road, a park section of the city of Youngstown, Victor J. Krull was thrown or fell from the truck and received some injuries.

No complaint is made as to the amount of the verdict hence it will be unnecessary to refer to the character and extent of the injuries received by plaintiff.

In his amended petition plaintiff alleged that Triangle Dairy, Inc., is a corporation duly organized and existing under the laws of Ohio, and as such is engaged in the general dairy and milk and creamery business; that in connection therewith it owns, manages and operates a fleet of automobile trucks in the city of Youngstown and adjacent territory for the delivery of its products; that on or about September 18, 1935, at about 3:30 P. M. he was riding in one of the defendant company's trucks at the request and invitation of the driver thereof, and in consideration of pay for his services promised him by such driver, for the purpose of giving assistance in the making of a delivery of a "certain late and emergency order which said company desired to be quickly made," and "that he was under the direction and control of said driver and not an employe of the defendant company at the time and in that connection; that the driver of said truck was an employe of the defendant and in charge of said truck."

The amended petition further alleges that the "defendant company, by and through its agent and employee aforesaid, did then and there carelessly, negligently and unlawfully operate said truck at a high, dangerous, excessive and unlawful rate of speed, to-wit, at about forty miles per hour, without having the said truck under control, and without being able to stop it within the assured clear distance ahead * * * and without having regard for the width, bends, curves and traffic then and there in the highway. Plaintiff says that he warned and requested the said operator to reduce the speed of said truck and not to drive into and through said bends and curves on the aforementioned narrow Bears Den Road at the speed and in the manner he was then and there driving. * * * That, regardless of all the foregoing, the said defendant did * * * continue to operate its truck in such an unlawful and negligent manner, as aforedescribed and complained of, that when this truck approached and came into one of said curves in this Bears Den Road, near and in proximity to what is generally known and referred to as Chestnut Hill Pavilion in Mill Creek Park, this plaintiff then and there seated in the said truck was hurled bodily from said truck," and received certain injuries.

It will be noted that there are no allegations in the amended petition of plaintiff predicating liability upon wanton or wilful misconduct of the defendant, and the cause was tried in the Common Pleas Court upon plaintiff's claim of simple negligence.

Triangle Dairy, Inc., in its answer pleaded six defenses: (1) General denial; (2) Specific denial of negligence; (3) That the truck operator, Joseph P. Devaney, was a fellow servant; (4) Assumption of risk; (5) Contributory negligence; and (6) That the dairy was a subscriber to the Workmen's Compensation Fund in good standing on the date of the accident.

The trial court withdrew from the jury

all the defenses except the defense of no negligence upon the part of the company and of contributory negligence of the plaintiff and held, as a matter of law, that Victor J. Krull was not an employe of Triangle Dairy, Inc., thus sustaining the allegation in plaintiff's amended petition to the effect that plaintiff was not in the employ of the defendant company.

At the conclusion of plaintiff's case, as well as at the close of all the evidence, the defendant moved the court for a directed verdict in its favor, which motions were overruled, and the overruling of these motions is assigned as error requiring not only the reversal of this case but final judgment in favor of defendant. In the event this court should not render final judgment for defendant-appellant, it urges three grounds for the reversal of this case and the remand thereof for retrial, to-wit: First, That the trial court erred in withdrawing from the jury's consideration the third and sixth defenses set forth in defendant-appellant's answer, the third defense being that Victor J. Krull was a fellow servant with Joseph Devaney, and the sixth defense being that Victor J. Krull was an employe and covered under the Workmen's Compensation Act; Second, That the verdict of the jury is contrary to and against the clear and decided weight of the evidence, and third, that the verdict of the jury is contrary to law.

We have considered all of the errors assigned and to a determination thereof have read the whole record, as well as the briefs of counsel. From the record we find the facts appearing therefrom, insofar as it is necessary to refer thereto for the determination of this case, to be substantially as follows:

The defendant company was engaged in the dairy business in the city of Youngstown, where it sold to its consumers milk, cream, ice cream and other dairy products; that for the purpose of making such deliveries it maintained and operated a fleet of automobile trucks; that one of these trucks was under the control of its employe, Joseph P. Devaney; that when a truck driver would load his truck for the purpose of making deliveries he was charged by the company with the products to be delivered and credited with any such products which were returned to the company's plant; that Victor J. Krull was employed by the company as a sorter of bottles and received therefor the sum of fifty cents a day, working seven days each week, and was in the employ of the company as such

sorter of bottles on the day he was injured, that he received no other compensation from the company for any services rendered by him.

There is some evidence of a rule of the company to the effect that the drivers "were not permitted to haul so-called passengers, or people not employed by the Triangle Dairy," and that this rule was brought to the attention of the drivers at different meetings held with them. There is no evidence in the record that any such rule had come to the knowledge of Victor J. Krull.

E. R. Lowry, who was manager of the company's plant at the time, testified as follows:

"Q. Were there any arrangements existant on the day of September 18, 1935, which permitted drivers of trucks to secure help from among the employes of the dairy?

A. Well, we worked very closely together and if one man could help another out, it was understood that that was perfectly all right, and was done at different times; quite often, in fact.

Q. Did you instruct the drivers with reference to help, that if they needed help they could get someone in the plant to help?

A. That was understood.

Q. That did not include, if I understood your testimony correctly, did not include persons who were not employes of the dairy?

A. At no time, no."

Upon cross examination Mr. Lowry testified:

"Q. So that then if Victor Krull was on the truck of the Triangle Dairy Company on September 18, 1935, on the occasion when he was thrown off, he was there with the consent of the company, was he;

A. He was, if it was at the request of the driver, yes."

The driver testified that on a number of occasions he had asked Victor Krull to help him with his work, "I paid him for a while and then I couldn't afford it, so I asked the company whether they would and they didn't say anything about it. and then I went back up on a certain day (quite a while before the accident) and I had a big order and I asked if Victor could go along and Mr. Lowry * * * said, "All right, take him along," but whether he got paid for it or whether he didn't, I couldn't say."

The driver further testified that he did ask Victor to go along to help him on the

26

day he was injured, and being further asked "Was there any bargain about what he should have as a helper," answered, "I didn't bargain on anything as a helper, I generally give him whatever I had that I could afford to give him and that day I had nothing."

Plaintiff testified that he had no work to perform for the defendant other than sorting bottles and that he generally went home as soon as he got through sorting them; that he never got paid by the defendant for any other kind of work than sorting bottles. All the testimony is to the effect that defendant did not pay plaintiff for any service except sorting bottles. The evidence further is to the effect that on the day plaintiff was injured Devaney helped plaintiff in sorting bottles so he would get through earlier and go with Devaney to help him with his work. It seems to have been the practice among the employes of the defendant that they were permitted to help each other with the work, but each employe was compensated by the company only for the work he was hired to do. The manager, Mr. Lowry, further testified:

"Q. In the course of employment of Mr. Krull and Mr. Devaney particularly, and others, state whether or not it was customary and usual in the regular employment for them to help one another with their work?

A. It was."

During the course of examination of Mr. Devaney the trial court, for the purpose of clearing up any ambiguity upon this subject arising from his testimony, persisted in inquiring of him to the point that he finally stated as follows:

"COURT: Now, did you and Victor discuss the matter of payment for that trip?

A. No, I didn't discuss it; I told him I would give him something; but I didn't, you know—

COURT: Oh, you told him before you started out on the trip that you would give him something?

A. Yes, I did.

COURT: And if the trip had been completed, would you have paid him something?

A. I would have given him a quarter or something.

COURT: Do you think you owe him a quarter now? * * * I mean for that trip on which he was injured.

A. Yes, he is entitled to.

COURT: Don't you think you owe him a quarter, under your agreement?

A. Yes sir, I do.

COURT: All right, that is all I want to know."

Under the circumstances shown we think that reasonable minds could arrive at no other conclusion than that plaintiff, at the time he was injured, was on the truck of the defendant at the invitation of the driver for some purpose and benefit to himself in addition to assisting the driver in the performance of his duties for the company and with the consent of the company.

The defendant's truck, which was being used by Devaney on September 18, 1935, was a stake body truck; that is a truck with an enclosed driver's cab but with no cover over the back, and the sides of the body were like a fence with slate, and this truck had only a half tailgate at the rear. The ice cream was carried in cans containing three to five gallons each and the truck was provided with a "packer" in which the cans were placed. This packer was of approximately the same height as the sides of the truck and at times empty cans would be picked up for return to the company's plant. On the occasion in question more cans were picked up than the packer would hold and the driver testified that on the return trip he told Victor Krull and the boy with him to get in back and hold the cans to keep them from falling out of the truck. The boys sat on top of the packer and held the cans which were in the rear of the truck with their legs. There were straps on the packer which could have been used by the boys for holding on, but apparently Victor Krull was not holding on at a time when the truck went around a bend in the road, and he was thrown over the side of the truck on to the highway. The speed of the truck was not great, no one testifying that it was more than twenty-five to thirty miles an hour. Although the boys both testified that they yelled at the driver not to go so fast around the curves. Devaney testified that he did not hear any such warning or request. His truck was under control as shown by the fact that as soon as Krull fell from the truck the other boy yelled, calling the driver's attention thereto, and he stopped the truck within twenty five to fifty-five feet from where Krull fell off. However, it was a question of fact for the jury under all the circumstances whether the truck was being operated in a negligent manner, as well as whether Victor J. Krull was guilty of contributory negligence, and we are not inclined to find that

the verdict is manifestly against the weight of the evidence upon the proposition of the negligence of the defendant or the contributory negligence of the plaintiff.

Although the amended petition of plaintiff alleges that the driver of defendant's truck was engaged in the delivery of an "emergency order" there is no evidence in the record to support this allegation. Indeed, plaintiff's own testimony shows that this order was being delivered at about 2:30 o'clock in the afternoon and consisted only of ordinary cans of ice cream of such weight as not to require any assistance to the driver and were such as he had customarily been delivering by himself. There was nothing unusual or out of the ordinary in the work being done at the time, and hence it can not be said that plaintiff was assisting in the performance of the company's business under an emergency; nor is there any evidence in the record tending to show that plaintiff had any knowledge or notice of any rule of the defendant company prohibiting his presence on the truck at the time.

In what relation then was he on the truck? Clearly he was not a trespasser under the related facts because he was there at the request of the driver and with the consent of the company. Since he had been promised pay for his services by the driver of the defendant's truck, plaintiff was there for some purpose or benefit of his own. Apparently plaintiff has brought himself within the rule establishing right of recovery on his behalf as laid down in a number of Ohio cases unless at the time he was injured plaintiff was an employe of the defendant company within the meaning of the Workmen's Compensation Act, to which we will hereinafter direct our attention. Laying aside, for the moment, consideration of the effect of the Workmen's Compensation Act upon the claim of plaintiff, we direct our attention first to the case of Railroad Company v Marsh, 63 Oh St 236, the third syllabus of which is as follows:

"3. One who is invited by a servant of a corporation in charge of its work or service to assist him therein, and does so with some purpose or benefit to be subserved in his own behalf in addition to the purpose of so assisting, is not a volunteer, and is entitled while so assisting. to be protected against the negligence of the servants of the company."

In the opinion in the cited case, beginning on page 245, it is stated:

"Where a person at the request of a servant of a corporation, assists such servant in the performance of his work without any purpose or benefit of his own to be served by such assistance, he is regarded as a mere volunteer, and the requests to charge would be applicable to such a case. But where he has a purpose or benefit of his own to be served by such assistance, in addition to the purpose of assisting the servant, he is regarded as acting in his own behalf, with at least the acquiescence of the company. A trespasser who is upon the company's premises wrongfully, and a mere volunteer, stand upon substantially the same footing, and are entitled to recover only for such negligence as occurs after the servants of the company discover their perilous situation, that is for wilful or intentional injury. But there is a class between mere volunteers and trespassers and partaking somewhat of the characteristics of each, that is where the person assists the servant at his request, not only for the purpose of assisting in the work of the master, but also for a purpose and benefit of his own. In such cases it cannot be said that he is wrongfully upon the premises, because he is invited by the servant in charge. The master may not have assented, but neither has he dissented, and being there upon the invitation of the servant in charge and there being no dissent of the master, he is regarded as being there by sufferance. And being there by sufferance he is rightfully there for the double purpose of aiding the servant, and thereby furthering the interests of the master, and of furthering his own private interests in his own behalf and for his own purposes and benefits. In such cases the person so assisting cannot be held to thereby become a servant of the master, because the servant inviting such assistance has no power or authority to employ other servants, and therefore the law of fellow servants is not applicable. As such assistant is not a trespasser, and not a fellow servant, and not a mere volunteer, the law assigns to him without name the position of one, who, being upon the premises of another by, the sufferance of such other, performing labor or service for his own purpose and benefit in his own behalf, is entitled of right to be protected against the negligence of the owner of the premises or his servants. The case of Street Railway Company v Bolton, 43 Oh St 224, was decided upon this principle, although the principle is not very

clearly stated in the report of the case. The case of Eason v S. & E. T. Ry. Co., 65 Tex. 577, belongs to the same class. The court in that case say: "The principle upon which a recovery is allowed is this: The injured person is not a volunteer, but engaged at the request or with the permission of the railway's agents in a transaction of interest as well to himself or his master as to the railroad company, and this entitled him to the same protection against the negligence of the company's servants as if he were at the time attending to his own private affairs. Though, performing a service beneficial to both, he is doing so in his own behalf, and not as a servant of the company. The request or acquiescence gives him the right to perform the service; the fact that he acts in his own behalf, however beneficial his labors may be to the company, gives him the right to be protected against the negligence of the company's servants'."

Further in the opinion it is stated:

"As the boy in this case by his engagement with the station agent was to perform a service in lighting and cleaning the lamps beneficial to the company on the one hand, and to himself on the other, as he was to receive and did receive pay from the agent for his services, we think that he was on the railroad at the time of the injury by the sufferance of the company, not as a servant of the company, nor as a trespasser, nor as a mere volunteer, but as one performing a service in his own behalf and for his own purpose and benefit and entitled of right to be protected against the negligence of the servants of the company."

In the cited case it will be noted that the service performed by the plaintiff by his engagement with the station agent was a service beneficial to the company, although not absolutely necessary. To the same effect are the following cases:

Railway Co. v Bolton, 43 Oh St 224;
Schnable v Railway Co., 102 Oh St 97;
General Railway Signal Co. v E. Valice, Admr., 25 O.C.C. (N.S.) 423;
Delivery Co. v Callaohan, 9 Oh Ap 65;
Laub Baking Co. v Thomas, 6 Abs 623.

In the case of Cloverdale Dairy Co. v Briggs, 131 Oh St 261, the syllabus is as follows:

"1. Where one accepts employment from a servant to assist the latter in the performance of the duties of his employment, and the evidence as to his knowledge of an express prohibition against such employment is conflicting, it is for the jury to determine whether he was in the employ of the master as the servant's assistant by sufferance, or whether he was merely the servant's servant.

"2. In an action for personal injuries by one who accepted employment from a servant, without the knowledge of and contrary to the rules of the master, to assist the servant in making deliveries of dairy products from the master's truck used for that purpose, in which action it is alleged that the truck of the master carried a sign to the effect that no riders were allowed thereon, and that the person thus employed had full notice and knowledge of such rules, it is reversible error to exclude evidence offered to prove that such person had knowledge of these rules."

In the last cited case the trial court relied upon the authorities to which we have hereinbefore referred and further held that notice or knowledge upon the part of the plaintiff on the rule of the company prohibiting its employes to hire assistants and prohibiting any but regularly employed employes from riding upon the company's trucks was not material and was therefore incompetent. This court, in an unreported opinion, affirmed the trial court, and both lower courts were reversed by the Supreme Court upon the sole proposition that the trial court erred in excluding evidence as to the plaintiff's knowledge of the express prohibition contained in the rules of the company. We were at first inclined to severely complain because of this reversal because no mention is made in the opinion of the Supreme Court as to whether it was adhering to or departing from the doctrine laid down in Railroad Company v Marsh, supra, but upon full consideration of the decision we arrived at the conclusion that the Supreme Court's reversal of the lower courts in no way affected the doctrine laid down in Railroad Company v Marsh, supra, except to the extent that from the excluded testimony and other testimony upon the question of knowledge of the plaintiff of the prohibitory rules of the defendant, the jury may have arrived at the conclusion that the plaintiff in that case was a trespasser. It seems reasonable to hold that one having knowledge of an express rule of the company prohibiting its drivers employing assistants in the performance of their services, but nevertheless persists in accepting such employment with full knowledge of the rule, would thereby

place himself in the position of a trespasser and take himself without the benefit of the doctrine laid down in Railroad Company v Marsh, supra, permitting recovery against the master by reason of some relationship existing by sufferance. But, as hereinbefore set forth the plaintiff in this case had no notice or knowledge of any rule of the company prohibiting his employment by the driver of defendant's truck, for the purpose of assisting such driver in his work. and the evidence further is to the effect, as shown by the testimony of Mr. Lowry, that plaintiff was on defendant's truck at the time of his injury by the consent of the defendant although not under any contract of employment by it to perform such services.

What, now, is the effect of the Workmen's Compensation Act upon the right of plaintiff to recover against defendant in this case? In the first place it may be noted that the trial court held that plaintiff was not an employe of the defendant company because plaintiff was working in violation of certain statutes prohibiting the employment of a minor under the circumstances shown by the evidence in this case.

In passing upon defendant's motion for a directed verdict at the conclusion of all the evidence the court stated:

"The way this case has developed, it presents as the first problem the question of whether the relation of master and servant obtained between these parties at the time of this alleged accident, and not merely whether one was employed by the other, but whether at the time of the accident the employe was in the course of his employment, because if he was, then the Workmen's Compensation Act would operate to prevent this suit. This is why that is important first. I think we are all agreed it would, because there isn't any doubt of the compliance generally of this employer with the Workmen's Compensation Act; so that, if the evidence here shows this plaintiff had that relation, contemplated by the Workmen's Compensation Act, with the defendant as his employer, the protective features of that Act would prevent the employer being sued in this kind of an action."

The court then stated that this is a question of law for the court under the evidence, and further said:

"* * * we have a minor, and the employment of this minor and the regulation of what comes within the course of that employment and what the length of hours

of that employment shall be and a host of other limitations are, by law, provided, so that I have to apply those in this situation. We can't ignore all these statutes governing the employment of minors in seeking to ascertain what is the relation of a minor to his employer; can't do it; I have got to read these statutes into this question and into this situation, and I don't have any hesitancy at all in saying that this boy was not in the course of his employment at that time, because—without referring to them—of the numerous limitations of the manner in which an employer can employ a boy of that age, and it could not legally permit him to work a limitless or undefined number of hours because the statutes don't permit it; this is one reason, it is sufficient in itself. There is another reason. It tells how many days he shall be employed, and we know what the evidence is here. I don't know whether he was legally employed at all; I don't think he was; they weren't allowed to employ him seven days a week, at his age; that is in the statute, even for four hours, they weren't allowed to; they were only allowed not more than six days in any one week; so we aren't going to discuss this matter, because he wasn't at that time, I am certain, for not only the limitations of these statutes, but because of the testimony."

We are unable to agree with the trial court that because a minor is employed to work longer hours per day or more days per week than the statute permits such minor would for that reason not come within the definition of an "employe" in the Workmen's Compensation Act. To so hold would defeat the right of many employes to obtain the benefits of this wholesome legislation.

In the case of Foundry Appliance Company v Ratliff, 113 Oh St 1; 148 NE 237, the Supreme Court held in the first paragraph of the syllabus as follows:

"1. By virtue of the provisions of §§1465-61 and 1465-93, GC, (108 O. L. 316, 324), all minor employes of employers complying with the Workmen's Compensation Act are brought within the provisions of that act."

In the opinion in the last cited case it is stated in the last paragraph:

"As we have seen, a minor employe, whether his employment be legal or illegal, is brought fully and completely within the provisions of the Workmen's Compensation Act."

But aside from the reasons assigned by

the trial court for holding that the plaintiff in this case was not an employe of the defendant under the provisions of the Workmen's Compensation Act, we are nevertheless confronted with the language of our Supreme Court in Cloverdale Dairy Co. v Briggs, supra, wherein the court holds in the syllabus that it is for the jury under the facts in that case to determine whether the plaintiff "was in the **employ of the master** as the servant's assistant by sufferance or whether he was merely the servant's servant."

Did the Supreme Court thereby give to the plaintiff the denomination of an employe of the master if he was without knowledge of any rule of the company prohibiting him from being on its truck? Did the Supreme Court in Cloverdale Dairy Co. v Briggs, supra, depart from Railroad Company v Marsh, supra, wherein it was held that plaintiff was **not a servant of the company,** not a trespasser, nor a mere volunteer, but one to whom the law assigns **without name** the position of being on the premises of another by sufferance of such other, performing labor or services for his own purpose and benefit, and therefore entitled of right to be protected against the negligence of the owner of the premises or his servants?

If in the last cited case the Supreme Court meant to change plaintiff's relation from one "not a servant of the master" to one "in the employ of the master by sufferance," is such employe by sufferance within the contemplation of "employe" as defined in the Workmen's Compensation Act?

In this connection we are further confronted with the third paragraph of the syllabus in the case of Schnable v Railway Co., supra, which is as follows:

"3. When the operator and agent in charge of a railroad station requests the superintendent to employ a helper, and is refused, but is subsequently given permission to take a young man into the office to learn telegraphy and to assist in the performance of the duties in and about the office, who does in fact so assist under the orders and direction of such agent, the relation of master and servant is thereby created and the doctrine of respondeat superior applies."

We must frankly say that we can not reconcile the statements in the above quoted syllabus if they are intended to convey the meaning that the relation of master and servant is created as between Schnable and the railway company and by reason thereof the doctrine of respondeat superior applies. Respondeat superior is not a doctrine applicable in an action by an employe against his employer, ▉▉ but is a doctrine whereby an employer is held liable to a third person for injuries occasioned by the act or negligence of the servant of the employer, done in the discharge or performance of the master's business. The act of the servant done within the scope and in the exercise of his employment is, in law, the act of the master himself, whereby negligence of an employe is imputed to the employer. The doctrine is so well known and established in Ohio and elsewhere we can not conceive that our Supreme Court intended to hold that the doctrine applies to an action by the servant against the master, and, hence, we are compelled to choose that portion of the above quoted syllabus which comports with the settled law and the established facts of the case, requiring us to reject the statement that the relation of master and servant has thereby been created as between Schnable and the railway company. However, we are inclined to the view that what the Supreme Court intended by this syllabus is that the facts related created the relation of master and servant as between Schnable and the operator and agent in charge of the railroad station. Thus interpreted the syllabus is fully sustained by the established law and the facts of the case, and is complete authority for the action of the trial court in the case at bar in finding that as a matter of law ▉▉ plaintiff was not an employe of the dairy company, and in excluding from the consideration of the jury the defenses of assumption of risk and the fellow servant doctrine, and we find and hold that there was no error in the trial court in these respects.

We will not pretend to understand what the Supreme Court meant by the language of the syllabus in Cloverdale Dairy Company v Briggs, supra, wherein it was stated that "it is for the jury to determine whether he (plaintiff) was in the employ of the master as the servant's assistant by sufferance, or whether he was merely the servant's servant," further than to again state that we are in accord with the decision of that case wherein it is held that it was reversible error to exclude evidence offered to prove that plaintiff had knowledge of the rule of defendant expressly prohibiting the employment of plaintiff by the driver of the truck. This was the only

matter necessary to a decision of the case, and we have been repeatedly told that nothing stated in either opinion or the syllabus is the law unless necessary to. a decision of the case. Knowledge or lack of knowledge of the rules by the plaintiff would determine whether he was a trespasser but could not determine the relationship of master and servant.

There is this distinction between the facts of the case at bar and those in Cloverdale Dairy Company v Briggs, supra. There it was a question to be determined by the jury whether defendant had knowledge that plaintiff had been employed by the driver to assist him; here it is conceded that the custom among the employes of the defendant permitted one employe to assist another in the performance of his duties, and that plaintiff was on defendant's truck with its consent but without being employed by defendant to assist the driver. From the evidence here it may be said that defendant consented that the driver employ plaintiff as the driver's servant but not as the defendant's servant. If such █ knowledge and consent may be said to have created plaintiff the employee of the defendant by sufferance and we think that is the most that can be said of it, still plaintiff would not be such an employe of defendant as defined in the Workmen's Compensation Act.

Sec 1465-61, GC, defines the term "employe," under the second paragraph of the section, as follows:

"2. Every person in the service of any person, firm or corporation, * * *, employing three or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written, including aliens and minors, but not including any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer."

Can it be said that one who is in the employ of the master by sufferance only is an employe under any contract of hire, express or implied? If so, the trial court erred in overruling defendant's motion for directed verdict and in excluding the sixth defense in the answer of the dairy company.

Fortunately, the Supreme Court in the recent case of Coviello v Industrial Commission, 129 Oh St 589, 196 NE 661, settles this question for us. From the syllabus in that case we quote the following:

"1. The Workmen's Compensation Act was enacted for the purpose of providing a state insurance fund for the benefit of injured and dependents of killed employes and requiring contribution thereto by employers. If the relation of employer and employe does not exist the provisions of the act have no application.

"2. The Workmen's Compensation Fund is created from moneys collected as premiums based upon payrolls in the various classes of occupations and industries.

"3. To constitute the relationship of employer and employe under the Workmen's Compensation law there must be a contract of hire express or implied.

"4. The definition of 'hire' applicable is: The price, reward or compensation paid for personal service or for labor.

"5. It is impossible to have a 'contract for hire' without an obligation that the person denominated the employer pay. the person employed."

It follows that one who is in the employ of the master by sufferance only is not in the employ of the master █ under a contract of hire, either express or implied, for the reason that there is no obligation upon the part of the person denominated the master to pay for the services of the so-called employe by sufferance; and since it is already shown by the evidence in the case at bar that there was no obligation on the part of the dairy company to pay plaintiff for his services in assisting the driver of the truck, a necessary condition to the existence of a contract of hire is lacking. It being conceded that plaintiff received no wages from the defendant for assisting the driver and that no obligation existed upon the part of defendant to pay plaintiff any wages for such services, it follows that defendant paid into the compensation fund no premium based on any wages for such service, and there would be nothing upon which to base the amount of compensation to which such injured person would be entitled; nor would the state receive any premium for carrying the liability in such case.

The record in this case shows that immediately after the injury to plaintiff, the defendant caused Victor Krull to sign a written report of the accident upon a form prescribed by the Industrial Commission, but this form was not forwarded to the Industrial Commission until a short time before the trial of the case in the Supreme Court. In the meantime the defendant had refused to sign any application for compensation. Under the circumstances thus

shown, we are of opinion and hold that the plaintiff made no election to accept the provisions of the Workmen's Compensation Act, and it is likewise clear from what we have hereinbefore stated that no allowance of compensation could have been made by the Industrial Commission to plaintiff, not because of the claim of plaintiff that the work he was performing was but "casual," but because there was no contract of hire.

We also call attention to the case of Industrial Commission v Bateman, 126 Oh St 279; 185 NE 50.

Although not necessary to a decision of this case but because it has been urged herein by counsel for appellee, that even though we should find that the plaintiff was standing in the relation of an employe of the defendant, nevertheless, the fact that defendant had complied with the provisions of the Workmen's Compensation Act would not be a defense because the work being performed by plaintiff at the time was but "casual," and therefore, not such as contemplated by the act, we refer to the case of The State ex Bettman, Atty. Gen. v Christon, 128 Oh St 56, 190 NE 233, from which we quote the following:

"Under the weight of authority as it now exists, the test as to what constitutes 'casual' employment is not the length of employment, but the nature of the employment." Many cases are cited.

"Under the general doctrine of these cases, the test is whether the employment was in the usual course of the employer's business. If so, the employment is held to be not 'casual'."

Apparently the word "casual" has little importance, the true test being as stated in the syllabus of the last cited case.

We have been cited by counsel for appellant to the case of Union Gas & Electric Co. v Crouch, a minor, 123 Oh St 81; 174 NE 6. We call attention that that case has to do with one who is designated by the court as a guest and for the reason that plaintiff was not assisting the servant of the defendant. That case has no application to the facts which we have under consideration here.

In closing we think it proper to say that the fact that the defendant in this case had knowledge that plaintiff was on the truck assisting the driver, and the further fact that defendant consented that plaintiff be on the truck assisting the driver, did not, under the rule established in the cases to which we have hereinbefore referred, alter the relationship between plaintiff and defendant or change that relationship from one wherein plaintiff was on the truck of defendant by sufferance of the defendant. A reading of the facts in the cases cited will disclose that in most of them the defendant had knowledge or consented to employment by its agent or servant of someone to assist him, but none of the cases are authority for holding that such was thereby an employment of the defendant under contract of hire.

It may be proper here also to add that since defendant was under no obligation to pay plaintiff for his services in assisting the driver, the relation of fellow servants of the defendant could not arise as between the driver and his assistant, and since the driver had the right to direct his own employe as to the extent and manner of the assistance to be rendered to him, and did so direct the plaintiff in this case to get into the rear of the truck for the purpose of keeping the empty cans from falling out of the truck, and since it was not knowingly dangerous for plaintiff to follow these instructions, it can not be held that plaintiff assumed the risk in doing so.

We conclude that the trial court did not err in excluding from the consideration of the jury the defenses to which we have hereinbefore referred; nor did the Common Pleas Court err, under the evidence in this record, in finding as a matter of law that plaintiff was not an employe of the defendant within the contemplation of the Workmen's Compensation Act. There is no error in the record prejudicial to the defendant below in the charge of the court to the jury, although many portions of the charge indicate that the rules stated to the jury were more applicable to a guest or invitee than to one who was rightly on the truck with some purpose and benefit to himself. We think these statements in the charge were beneficial rather than prejudicial to the defendant, as they tended to require proof of a stronger character than was necessary to the liability of the defendant.

It follows that the judgment of the Common Pleas Court must be and the same is affirmed.

CARTER, J, concurs.

ROBERTS, J, sat in the hearing of this case but died before final determination hereof.