## Dunmire *v.* Fitzgerald, Appellant.

Argued March 22, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Edward O. Golden,* with him *Carroll Caruthers,* for appellant.

*Marquis M. Smith,* with him *Vincent R. Smith,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1944:

This case involves the oft-recurring but legally troublesome subject of the agency of a borrowed employe.

Defendant, who conducts a garage and automobile business, was the owner of an automobile hearse which he leased from time to time to undertakers. Plaintiff, who is in the undertaking business, hired it for the purpose of conducting a funeral. Defendant supplied the gas, the oil, and a driver named Kiehl. The funeral procession was to travel a distance of 40 miles. Plaintiff led in his own car accompanied by an employe named Stitt; following him came an automobile containing the pallbearers, then the hearse, and then the cars of the mourners. After proceeding about ten miles he noticed that the procession behind him had disappeared; he went

back some distance and discovered that the hearse had stalled. After getting the other cars off the highway so that they would not impede traffic he returned to the hearse where he found Kiehl and Stitt beside it. He walked forward for a distance of some six or eight feet and, while standing there, an explosion occurred which set his clothes afire and burned him badly. He brought the present suit for damages, alleging both a breach of a warranty that the hearse was in proper condition and negligence on the part of Kiehl in the manner in which he attempted to start the hearse. He recovered a verdict of $22,500. Defendant appeals.

The real basis for plaintiff's action is the charge of negligence and not the breach of warranty. ·Whether such a warranty existed and, if so, whether it was breached, are of no importance from a legal standpoint because the stalling of the hearse had no causal relationship to the accident but merely furnished the condition or gave rise to the occasion by which it was made possible: See *Bruggeman v. City of York*, 259 Pa. 94, 102 A. 415; *Gaupin v. Murphy*, 295 Pa. 214, 145 A. 123. On the other hand, there was sufficient evidence from which a jury might reasonably conclude that Kiehl's attempt to start the car was performed in a negligent manner. In order to prime the carburetor he removed the air filter and from an open pan poured in what is alleged to have been an excessive quantity of gasoline (according to Stitt from a half pint to a pint); he then handed Stitt the pan containing what gasoline was left and instructed him either, as Stitt testified, "to pour some in" or, as he himself testified, to "hold" it while he saw "whether it will run"; Stitt did not in fact pour in any of the gasoline. Kiehl then entered the driver's seat and, according to Stitt, pressed the starter button, whereupon the explosion followed immediately; "the pan blew up; the whole motor was on fire; there was fire everywhere." Evidently some of the flaming gasoline traversed the distance from the hearse to where plaintiff

was standing and caused him the dreadful injuries which he suffered. There was expert testimony on behalf of plaintiff that what Kiehl did was improper, unsafe and dangerous. It is true that an expert for defendant offered other theories which might account for the explosion, but it is not necessary for a plaintiff to exclude everything which ingenuity may suggest as having possibly caused or contributed to an accident: *Lott v. Peoples Natural Gas Co.*, 324 Pa. 517, 526, 188 A. 582, 585; *Saganowich v. Hachikian*, 348 Pa. 313, 316, 35 A. 2d 343, 345. From all the evidence it was for the jury to determine whether it was caused in the manner claimed by plaintiff and whether negligence on the part of Kiehl was responsible for it. As far as Stitt is concerned [1] there is nothing to indicate that *he* was negligent; he merely stood quiescently by, holding the pan, and had no apparent reason to anticipate the accident; he testified that he did not know that Kiehl was going to press the starter button; moreover, it was not shown that the burning gasoline which reached plaintiff emanated from the pan and not from the motor, or that the accident and its consequences would therefore have been any different had Stitt not been standing there at all.

This brings us to the principal problem involved—one in regard to which error was committed that makes a retrial necessary. The learned trial judge gave the jury

---

[1] It is argued by plaintiff that by requesting Stitt, in the emergency situation which arose, to hold the pan, or to pour gasoline from it, Kiehl made him the agent of defendant. The rule in regard to the emergency employment of an assistant does not, however, apply to a case such as this where Stitt and the plaintiff who employed him had an interest of their own in having the hearse started as quickly as possible and the assistance which Stitt rendered, although at the request of Kiehl, was for their own benefit and not primarily to promote the interest of defendant; see *Denton v. Morgan*, 151 N.Y.S. 729, aff. 223 N. Y. 591, 119 N. E. 1038; *Krull v. Triangle Dairy, Inc.*, 59 Ohio App. 107, 17 N. E. 2d 291; 35 Am. Jur. 593, section 164; 39 C. J. 554, section 663; Rest., Agency, section 485, comment (a), especially illustration 2.

what were practically binding instructions to the effect that Kiehl was the servant and agent of defendant at the time of the happening of the accident, although there was evidence from which the jury, had the question been freely submitted to them, might have found that for the duration and purposes of the funeral Kiehl was the servant of plaintiff, notwithstanding his general employment and the payment of his wages by defendant.[2] While plaintiff testified that he had no authority whatever over the driver of the hearse, he admitted that he was in entire charge of the funeral procession. The case is not one in which a vehicle and its operator are hired merely to transport a person or property from one place to another and the lessee is wholly unconcerned with the details of the transportation. Here plaintiff not only prescribed the route taken by the procession and fixed the speed at which the cars traveled but, as the undertaker, he was largely concerned with the orderly management of the funeral cortège. When the hearse stalled the procession was unpleasantly disrupted, and, while he may have had no right to direct Kiehl in regard to making extended mechanical repairs on the hearse had any such repairs been required, a jury might reasonably infer from the evidence that, as it was his business to see that the funeral procession promptly resumed its course, he had the power and authority to instruct Kiehl to get the hearse moving and, for that purpose, to prime the carburetor, start the motor, or take such other operative action as might be found necessary or desirable. Defendant testified that the drivers, including Kiehl, "had standing orders that the undertaker was the man in charge and the driver was to do as he says at all times," and in this he was corroborated by Kiehl himself. The situation, therefore, was not like those in which the facts

---

[2] The fact that defendant, in accordance with his general practice, affixed plaintiff's name-plates to the sides of the hearse has no significance in the case, since admittedly the purpose was merely to benefit plaintiff in the way of advertisement.

are all undisputed and the inferences plain—as in *Lang v. Hanlon,* 305 Pa. 378, 157 A. 788, where the circumstances, though in some respects similar to those in the present case, showed greater, indeed complete, control of the driver by the undertaker who conducted the funeral, or in *McGrath v. Edward G. Budd Manufacturing Co.,* 348 Pa. 619, 36 A. 2d 303, where the situation left no doubt as to which of the parties was the real employer at the time of the accident. Where, as here, it is not entirely clear who was the controlling master of the borrowed employe, and different inferences in that regard can fairly be drawn from the evidence, it is for the jury, not the court, to determine the question of agency: *Lang v. Hanlon,* 302 Pa. 173, 178, 153 A. 143, 145; *Rosen v. Diesinger,* 306 Pa. 13, 16, 158 A. 561; *Dougherty v. Proctor & Schwartz, Inc.,* 317 Pa. 363, 365, 176 A. 439, 440; *Walters v. Kaufmann Department Stores, Inc.,* 334 Pa. 233, 237, 238, 5 A. 2d 559, 561; *Joseph v. United Workers Association,* 343 Pa. 636, 639, 23 A. 2d 470, 472, 473. The test is always whether, in the particular service for which the employe was borrowed, he continued liable to the direction and control of his general employer or became subject to that of the party to whom he was lent or hired, not merely with regard to the result of the work but as to the way in which it should be performed. The criterion is not whether the borrowing employer *in fact* exercised control, but whether he had the *right* to exercise it.

The question whether, under all the facts and circumstances established by the evidence, Kiehl was, at the time of the happening of the accident, the servant of plaintiff or of defendant, should have been left to the jury, together, of course, with the question whether he was negligent and thereby caused the explosion.

Judgment reversed and new trial granted.