## LYLE HUEBNER v. FARMERS COOPERATIVE ASSOCIATION OF HOLLAND AND ANOTHER.

167 N. W. (2d) 369.

April 18, 1969—No. 41206.

*Richard T. Hefferan* and *Mott, Grose, Von Holtum & Hefferan,* for relator.

*Paul A. LaRocque,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission.

Relator, Lyle Huebner, resides with his family on the farm he owns and operates in the vicinity of Holland, Minnesota. He has been farming for some years. In order to obtain feed for his livestock, he found it necessary at times to grind corn, oats, and other grain, and to mix these grains with commercial feed. For this purpose, on November 29, 1965, he called Farmers Cooperative Association of Holland, an elevator company, and requested that its portable mixer and grinder be brought to his farm for mixing and grinding some feed. The cooperative's employee, Robert Hammer, Jr., brought the grinder to the farm and, as was the practice, relator helped him with the grinding. Hammer operated the grinder-mixer and relator, using his tractor, scooped corn into the grinder's hopper. In attempting to adjust the machinery, Hammer got his hand caught in the gears. After releasing his hand, he informed relator that he had injured it and asked relator to take him to get medical attention. Relator claims that in the act of jumping off his tractor he injured his knee. He was not certain, but thought he might have stepped on a corn cob or something like that in reaching the ground. He made no complaint at that time to Hammer about falling or about injuring his knee. He took Hammer to the doctor but made no complaint about his alleged injury to the doctor, nor did he seek any medical attention or treatment at that time. Eventually, however, he was hospitalized and surgery was performed on his knee. Relator kept books and records for his farming operation and included his medical and surgical expenses as part of his business expenses.

Relator testified that on the day of Hammer's injury relator informed the manager of the elevator company that he had injured his knee in jumping off the tractor. Relator's attending physician and surgeon was of the opinion that relator had suffered a 25-percent permanent partial loss of the use of his left leg. Dr. Meyer Z. Goldner, who examined relator at his request for the purpose of testifying before the referee, said that relator had suffered a 20-percent permanent partial disability. Dr. T. J. Arneson, who also examined relator at the request of employer, testified that relator had received a 20-percent permanent partial disability.

On these facts the referee awarded compensation to relator, but upon appeal to the commission his findings were reversed by the full commission.

Farmers are exempt from the provisions of the Workmen's Compensation Act under Minn. St. 176.041, subd. 1, which in part reads as follows:

"Subdivision 1. This chapter does not apply to any common carrier by railroad engaged in interstate or foreign commerce, domestic servants, farm laborers, or persons whose employment at the time of the injury is casual, and not in the usual course of the trade, business, profession, or occupation of his employer."

Section 176.011, subd. 16, states what constitutes personal injury in part as follows:

" 'Personal injury' means injury arising out of and in the course of employment and includes personal injury caused by occupational disease; but does not cover an employee except while engaged in, on, or about the premises where his services require his presence as a part of such service at the time of the injury and during the hours of such service."

Section 176.011, subd. 19, defines "worker" as meaning "employee."

This court has held that, to exclude an employee from the Workmen's Compensation Act, the employment must be both casual and not in the usual course of the employer's business. See, Farnam v. Linden Hills Congregational Church, 276 Minn. 84, 93, 149 N. W. (2d) 689, 696, where this court said:

"It is clear from a reading of the foregoing statute [§ 176.041] that it excludes employments only if they were both 'casual' *and* are likewise not in the course of the employer's trade, business, or occupation."

Accord, Amundsen v. Poppe, 227 Minn. 124, 128, 34 N. W. (2d) 337, 340. We have also held that if employment is within the usual course of employer's business, it is within the Workmen's Compensation Act, even though the employment may be casual. Altermatt v. Altermatt, 239 Minn. 241, 58 N. W. (2d) 256.

We have examined many cases bearing upon what constitutes casual employment. The court's interpretation of that term in Schneeberg v. Industrial Comm. 67 Ohio App. 499, 503, 37 N. E. (2d) 427, 429, is in

agreement with our views and furnishes a clear statement of the applicable rule:

"* * * [T]he test as to what constitutes casual employment is not the length of the employment but the nature of the employment; and that in order not to be considered an employee the workman must be both a person whose employment is of a casual nature, and, secondly, one who is employed for purposes otherwise than in the trade or business of the employer. In order not to be an employee under these sections the workman must not only be an employee whose employment is of a casual nature, but one who is employed otherwise than for the purpose of carrying on his employer's trade or business."

Thus, an employer may be liable under the compensation act for injuries to an employee whose employment is casual but who is performing work in the regular course of the employer's business. See, Vescio v. Pennsylvania Elec. Co. 336 Pa. 502, 9 A. (2d) 546.

In Partridge v. Blackbird, 213 Minn. 228, 6 N. W. (2d) 250, 12 Minn. W. C. D. 404, this court held that the nature of the employment taken as a whole is the test as to whether an employee is a farm laborer within the exceptions to the application of the Workmen's Compensation Act. The principal question presented in that case was whether or not Partridge was a "farm laborer." This court reversed the Industrial Commission, which had awarded compensation to Partridge against his employer, saying (213 Minn. 230, 6 N. W. [2d] 251, 12 Minn. W. C. D. 406):

"* * * [W]e hold that the evidence compels a finding that Partridge was a farm laborer and that Blackbird was not engaged in an independent commercial enterprise or business. In operating his rather extensive acreage, Blackbird had the necessary equipment for so doing, whereas his neighbors and other farmers in his vicinity, with perhaps less acreage, naturally sought to hire work done with labor-saving machinery which they did not possess. Sometimes they paid cash for such service and sometimes paid in exchange of work. Certainly these incidental jobs did not constitute a commercial enterprise. It is the policy of the legislature to exempt farm labor from the compensation act. We should not go contrary to that policy by interpreting into the act exceptions that are not there."

In Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124, this court in a very complete way distinguished between when a workman is a farm laborer and when he is not one.

■ Relator seeks to come under the ruling of this court in State ex rel. Nienaber v. District Court, 138 Minn. 416, 165 N. W. 268, L. R. A. 1918F, 200. In that case the relator was engaged in the retail sale and delivery of coal and other fuel. One of his wagons, loaded with coal for delivery to a purchaser, became mired and the team hitched thereto was unable to remove it. The driver requested plaintiff, who was passing the scene, and who was in the employ of the city of St. Paul as a street sprinkler, driving his own team, to assist in releasing the coal wagon. In complying with the request, plaintiff was injured. This court held that, though not otherwise in relator's employ, plaintiff was its servant and employee in rendering the assistance; that the driver in charge of the wagon so mired had implied authority to employ him for the temporary purpose; and that plaintiff was entitled to an award for his injury under the Workmen's Compensation Act.

Mr. Chief Justice Brown, who authored the opinion, dissented from the conclusion of the majority that plaintiff, under the facts stated, became an employee of relator within the meaning of the compensation act, stating (138 Minn. 418, 165 N. W. 268, L. R. A. 1918F, 200):

"* * * In my view of the matter, in assisting relator's driver out of the mire, plaintiff acted the part of the Good Samaritan, a kindly volunteer, and not as an employee of relator within the meaning of the compensation act."

A few years later this court in State ex rel. Albert Lea Packing Co. v. Industrial Comm. 155 Minn. 267, 193 N. W. 450, had before it the following facts: A proceeding under the Workmen's Compensation Act was brought by Arthur Nelson, employee, against Minnesota Waterloo Creamery Company and Albert Lea Packing Company, employers. The two companies occupied separate parts of the same set of buildings in the city of Faribault. The boiler room of the creamery adjoined the engine room of the packing company and the rooms were connected by a doorway. Herbert Suddendorf was the engineer and Nelson the fireman of the

creamery. William Lambert was the engineer of the packing company. The three were on friendly terms and occasionally did small favors for each other.

The packing company operated its refrigerating plant with an electric motor, but also had a steam engine for use whenever the electric power might be interrupted. The steam for this engine was furnished by the creamery company from its boilers, the packing company paying it for the steam used. Lambert had changed from the electric power to the steam power while repairing a belt driven by the electric motor. Having completed the repairs, he decided to change back to the electric motor and so informed the foreman of the packing company, who directed a mechanic to assist him. In making this change, it was necessary to disconnect and remove a 7-foot-long steel rod weighing about 450 pounds. Although this rod had been removed at times by only two men, Lambert knew that it would be difficult for him and the mechanic to remove it without assistance and asked Suddendorf for help. Suddendorf directed Nelson to assist them. While assisting them, one of Nelson's fingers was caught between the rod and the iron frame and crushed so badly it had to be amputated. Each company denied any liability for workmen's compensation, asserting that if any claim for compensation existed it was against the other company. The commission awarded compensation against the packing company, and that company brought the case here by certiorari.

Nelson was employed and paid by the creamery company. His contract of hire was with that company, not with the packing company. He had never received or claimed any wages from the packing company and did not expect any pay for the aid given to Lambert. The relation of employer and employee as defined by the compensation law did not exist between him and that company. While this was not seriously questioned, it was nevertheless contended that an emergency had arisen which brought the case within the doctrine of State ex rel. Nienaber v. District Court, *supra*, and therefore authorized Lambert to employ such assistance as he deemed necessary. This court was unable to sustain that contention. We pointed out that Lambert could select his own time for making the change. He had received no instructions concerning it and there was no need for haste. He was familiar with the situation and conditions, and knew fully what it was

necessary to do to make the change and how to do it. He had informed the foreman that he would change back to the electric power on Sunday morning and the foreman directed a mechanic employed by the company to assist him in doing so. Nothing unusual or unexpected had occurred. No unforeseen difficulty had been encountered. Lambert could have obtained any needed help by merely reporting his need to the packing company's foreman, who was in another part of the plant and readily accessible. Upon these facts this court concluded (155 Minn. 270, 193 N. W. 451):

"* * * It cannot be said that under the circumstances here existing he was confronted by an emergency. Nothing had happened which he had not anticipated. In fact, without the knowledge of his superiors, he had arranged with Suddendorf for the desired assistance before beginning the work of making the change."

Relator has placed reliance upon State ex rel. Nienaber v. District Court, *supra*, and a leading case from Wisconsin, Conveyors Corp. v. Industrial Comm. 200 Wis. 512, 228 N. W. 118, although neither case has subsequently been extended beyond its facts. In the Conveyors Corporation case an employee, Collins, was found by another employee of Conveyors Corporation, Becker, lying at the bottom of a tank the company was installing for another corporation. Collins had been overcome by gas, and Becker immediately went to get aid from the employees of the other corporation. While getting Collins out of the tank, one of the other corporation's employees, Galko, died. The Wisconsin Supreme Court awarded compensation to Galko's widow against Conveyors, holding that the other corporation's employees procured by Becker were, during the rescue, acting for Conveyors. The court said:

"* * * Compliance with the request of Becker for assistance under the circumstances constituted them employees of that corporation. One so complying is not a volunteer, but an employee within the meaning of the act, whether the employee making the request has express authority to procure help or an emergency exists from which authority is implied." 200 Wis. 516, 228 N. W. 120.

The Wisconsin court cited State ex rel. Nienaber v. District Court, *supra*, as authority for its decision.

Nemeth v. Farmers Co-op. Elev. Co. 252 Wis. 290, 31 N. W. (2d) 569, involved an action for injuries to a woman pinioned by a post with which she was preparing to block a rear wheel of the defendant's truck so that it would remain stationary on sloping ground while the driver delivered coal to her home. The defendant contended that the plaintiff should not be permitted to recover because, under the circumstances, an emergency had been recognized by a regular employee of the defendant and when he arranged with plaintiff to place the block she became a temporary employee of defendant; and that as such she had a right of compensation under the Workmen's Compensation Act which constituted her exclusive remedy. Without referring to the Conveyors Corporation case, the Wisconsin court rejected this argument, saying (252 Wis. 294, 31 N. W. [2d] 570):

"It will not be necessary here to determine whether an emergency arose which entitled the truck driver to engage temporary help on behalf of his employer. Under the facts as stated we think it clear that the appellant was engaged in furthering her own interests and that her activities were for purpose of getting delivery of the coal and not to accommodate the coal company. It would appear to be a rather far cry to make the person who had ordered services an employee merely because she casually assisted a workman who was performing the service. This exception to the rule appears to be supported by the authorities. Denton v. Morgan (1915), 166 App. Div. 117, 151 N. Y. Supp. 729, 119 N. E. 1038."

A new trial upon the merits was ordered.

In Denton v. Morgan, 166 App. Div. 117, 151 N. Y. S. 729, affirmed without opinion, 223 N. Y. 591, 119 N. E. 1038, plaintiff was sent by his employer to pick up machinery it had purchased from Ingersoll-Rand Company. The machinery was too bulky to be loaded on plaintiff's truck, so defendant express company was called to pick up the machinery. Defendant's two employees could not handle it alone, so plaintiff and two of Ingersoll-Rand's employees undertook to help load the machinery on defendant's wagon. In doing so plaintiff was injured. He sought to establish that he was an "emergency employee" of defendant upon the theory that where an employer charges a regular employee with the performance

of a certain duty and it appears that the force available to perform it is not sufficient, or an emergency occurs which requires assistance for the employee to perform it, he is impliedly authorized to call on others to assist him and that they thereby become employees of the original employer, who is responsible for their negligence under such circumstances and assumes toward them the same obligation as he has toward his regular employees. In that case, however, the author of the opinion said (166 App. Div. 119, 151 N. Y. S. 730):

"* * * I do not think that the facts in this case bring it within this principle. Here plaintiff and the Ingersoll-Rand Company and defendant were all engaged in shipping this crate to Atlantic City. Defendant had received a call to send a wagon to ship this machinery, but when the wagon got there with but two men it was found that the article to be shipped was of a weight and size which made the wagon improper, and that the two men who had been sent could not load the wagon. Both the plaintiff and the Ingersoll-Rand people were engaged in this shipment and were interested in having the goods promptly shipped. They were not outside persons called in by the defendant's employees to help them perform some duty imposed upon them by the defendant. The plaintiff and the Ingersoll-Rand people were, according to plaintiff's testimony, asked to give the driver a hand in loading this crate upon the wagon. In performing that work they were not acting on behalf of the defendant, but as much on behalf of the shippers of the crate. They were all engaged in the work of shipping this crate to Atlantic City. Plaintiff was a representative of the gas company which had purchased the machinery and was engaged in having it shipped to Atlantic City. The Ingersoll-Rand people had sold the machinery to the gas company and were shipping it at its request. And when the driver of the express company requested plaintiff and the employees of the Ingersoll-Rand Company to assist him in loading the crate upon the wagon it was not as an 'emergency employee' or other employee of the defendant, but as a man engaged in making a shipment, and as much for their benefit as for the defendant's benefit. There was no evidence that it was the duty of the express company to load this crate upon its wagon, nor that it was bound to supply the labor necessary to put it upon the wagon, and I do

not see that it assumed that duty. It was, therefore, apparent that the two men furnished by the express company were insufficient to load this crate, and the driver had the alternative of returning to the defendant's offices for additional assistance or for a proper truck, or to request the shipper or its employees to assist him in loading the wagon. Such request was not, I think, at all analogous to the cases upon which plaintiff relies, where it is held that an outsider requested by an employee to assist him in the performance of his duties becomes an 'emergency employee,' but is a case in which the shipper and the express company unite in loading the wagon and making the shipment, and in such case the employment was not by the express company."

There is no doubt that one in peril and faced with an emergency as a result of his employment has, dependent upon the circumstances and the type of facts involved, the implied authority to hire help. But the question is, does the power and authority to hire automatically create the relationship of master and servant between the contractor whose employee is in peril and a volunteer who speeds to the rescue. We hold that it does not. It is elementary that the primary essential of a master-servant relationship is a contract of hire, either express or implied. The question is, was there an implied contract in the instant case. Was there a meeting of the minds, if not expressed, at least implied? 1 Schneider, Workmen's Compensation Text, § 234, has this to say in regard to emergency helpers and assistants:

"The usual tests of the relationship of employer and employee should be applied to emergency helpers or assistants who claim compensation for their injuries. The application of these tests to such persons is made difficult by added complications such as the authority of an employee to engage such assistance in time of emergency. Is the assistant a mere volunteer, or one who obviously expected no pay, or was not in a position to properly demand pay for his assistance?"

There is nothing in the record in the instant case to indicate that relator expected any pay. Obviously he did not. There is also the question of whether either Hammer, who asked for help, or petitioner, who jumped off his tractor in response thereto, had in mind at that time that they were about to establish and create a master-servant relationship. Relator, in-

stead of claiming workmen's compensation as an employee, might have brought suit against the cooperative for negligence. Had he done so, it seems clear that the elevator company could not have successfully raised the defense that relator's only rights were under the Workmen's Compensation Act because there had been thrust upon him at the moment of rescue the relationship of master and servant. Nemeth v. Farmers Co-op. Elev. Co. *supra*.

We have searched the cases in this state subsequent to the Nienaber case and have found none determinative of the issue in the case at bar. As stated earlier, it is clear that relator expected no compensation in the first instance. Neither is there any indication that he considered himself a servant under the control of the cooperative. As suggested by the commissioner who wrote the opinion accompanying the decision of the commission, relator's response at the time of Hammer's injury would seem to be that of a Good Samaritan, a volunteer instinctively going to the aid of a person in peril.

In the light of the provisions of the Workmen's Compensation Act and the cases in this state since State ex rel. Nienaber v. District Court, *supra*, defining the master-servant relationship, the Nienaber case is not controlling in the fact situation presented here. While relator's accident was unfortunate, we must conclude that the record herein, taken as a whole, fails to establish the relationship of master and servant as between relator and the cooperative within the meaning of the Workmen's Compensation Act.

The decision of the Workmen's Compensation Commission is affirmed. Affirmed.