## Rau *v.* Wilkes-Barre and Eastern R. R. Co. (et al., Appellant).

Argued April 12, 1933.   Before Frazer, C. J., Simpson, Kephart, Schaffer, Drew and Linn, JJ.

*W. B. Eilenberger,* with him *Harvey Huffman* and *Harold C. Edwards,* for appellant.

*John J. McDevitt, Jr.,* with him *C. C. Shull,* for appellee.

OPINION BY MR. JUSTICE LINN, May 26, 1933:

Plaintiff has judgment on a verdict against appellant for the death of her husband.* He was. employed by Sordoni Construction Company, hereafter called Sordoni, engaged in constructing a building for a telephone company at Stroudsburg, Pennsylvania. Part of the material used was Indiana limestone, consigned to Sordoni, and transported by rail in interstate commerce. A crane, belonging to appellant, was used in unloading the cars. The boom of the crane, negligently operated, as the verdict establishes, fell on plaintiff's husband.

The question on this appeal is whether appellant or decedent's employer is responsible, and the answer depends on which was in control of the unloading; or, in other words, was the crane operator, though generally appellant's servant, Sordoni's servant for the limited purposes of the particular employment? Plaintiff has judgment on the theory that appellant had agreed with Sordoni to unload the cars. Against that theory, appellant contends (1) that it made no agreement to unload, (2) that the law prohibited carrier and consignee from making such agreement, and (3) that its crane, with the operator, was merely loaned for use by Sordoni, whose workmen unloaded the stone. The evidence on the point was submitted to the jury whose verdict must be understood as determining that appellant and Sordoni had agreed that appellant, and not Sordoni, would unload the cars.

We have carefully reviewed all the evidence (too long to be repeated here) and do not find any that will sup-

---

* A compulsory nonsuit was entered as to Erie Railroad Company and Wilkes-Barre and Eastern Railroad Company.

port an undertaking by appellant to unload the freight for Sordoni. The learned court should have affirmed appellant's request for binding instructions, or, later, granted its motion for judgment n. o. v.

Not only does the evidence, apparently relied on, not support the inference that there was such contract, but it is only one of three important evidential elements in the case; the other two must be given consideration in their relation to each other and to what Jones testified. We refer, first, to a freight tariff regulation governing the shipment; second, to the manner in which the cars were unloaded, a process inconsistent with the contention that appellant did it as an independent contractor.

1. The tariff regulation. The record shows that the applicable freight tariff controlling the transportation and delivery of carloads provided: "Owners are required......to unload from cars freight......carried at carload ratings." This was a carload shipment of that character. The regulation is equally binding on the consignee, Cordoni, and on appellant (Boston & Maine R. R. v. Hooker, 233 U. S. 97) ; it has the force of an act of Congress. Under the tariff regulation, neither Sordoni nor appellant's freight agent could lawfully agree that appellant should unload the car: Interstate Commerce Act, 49 USCA, section 6, paragraph (7), page 238. Jones's account of what was said by him and by appellant's agent, Becker (the apparent basis for submitting the question to the jury), must therefore be considered in the light of the presumption that neither intended to commit a crime in routing the shipment over appellant's line; and, if it will reasonably bear that interpretation the law requires that it must be so regarded. The presumption that they intended to act lawfully and, in fact, did so, may be rebutted, of course, by evidence that is clear (cf. Phœnix Silk Mfg. Co. v. Reilly, 187 Pa. 526, 530) ; but it is well settled that if conduct and words, said to be ambiguous, are susceptible of a lawful interpretation and also of one that is unlawful, the law-

ful interpretation must be accepted and applied: White
v. Bates, 234 Ill. 276, 283; Hendricks v. Calloway, 211
Mo. 536, 560; and the burden of proof is on plaintiff:
Horan v. Weiler, 41 Pa. 470. In Cincinnati & Tex. Pac.
Ry. v. Rankin, 241 U. S. 319, 327, the court said "It can-
not be assumed, merely because the contrary has not
been established by proof, that an interstate carrier is
conducting its affairs in violation of law. Such a car-
rier must comply with strict requirements of the federal
statutes or become subject to heavy penalties and, in
respect of transactions in the ordinary course of busi-
ness, it is entitled to the presumption of right conduct.
The law 'presumes that every man, in his private and
official character, does his duty, until the contrary is
proved; it will presume that all things are rightly done,
unless the circumstances of the case overturn this pre-
sumption, according to the maxim, omnia presumuntur
rite et solemniter esse acta, donec probetur contrarium'
[citing cases]."

2. The unloading. The evidence of plaintiff's wit-
nesses, describing the unloading, supports appellant's
contention that it was done by Sordoni's men with the
borrowed crane and operator. Jones testified Becker
"told me he would arrange *to give us a crane to unload*
and along with that he would give me storage space in
his yard......[where the cars were unloaded]......";
that nothing was said about an operator for the crane
"but that was understood......" and that there was an
operator *"when we [Sordoni] unloaded."* Jones sent
four of his men, one, Sheeley, being in charge, *"to assist
in the unloading."* One man, operating the crane, could
not, alone, have unloaded the car. The evidence is that
they unloaded with two of the men working on the car
and two on the ground, those on the car checking the
stone and attaching the hoisting apparatus, and those
on the ground placing the stone and releasing the hoist.
The car is described by one of the workmen, called by
plaintiff, as having sides "over three feet, a little over

three feet" high. The crane was on a car on an adjoining track, and the operator received signals from time to time from Sordoni's man in charge, to advise him when they desired him to hoist and when to lower. How far the crane had to be raised or lowered, and how far the boom had to be swung to deposit the stone on the ground at the points desired, by the men placing them, depended, of course, on the orders of Sordoni's men who were doing the work, and varied with the progress they made. The car unloading on the day of the accident was the seventh or eighth car that had been so unloaded. To facilitate their work, and entirely for their own convenience, Sordoni's men had removed the bucket or clam-shell, normally a part of the hoisting apparatus; it was therefore necessary for them to reattach it before the crane could be returned to appellant; while making this adjustment, the fatal accident occurred. The boom had been swung over the point where the clam-shell lay and, before the attachment could be made, the boom fell on Rau.

Returning now to the learned trial judge's summary of the evidence of Jones, there is nothing that can be selected from it to support the contract contention except, perhaps, Jones's statement that "Becker told me he had the crane and could unload it......" But that is mere paraphrase of what was said in the negotiation; the words actually used do not appear; and the conclusion stated contradicts his earlier declaration that what Becked said, was that "he would arrange *to give us a crane* to unload......" In the light of the prohibitory tariff regulation, and of the evidence describing how the unloading was done, both of which must also be given their effect, Jones's statement is insufficient to support the inference that Sordoni and appellant intended to, and did, commit a crime by agreeing as contended by plaintiff. What was said and done is consistent, to say the least, with borrowing the crane with its operator to perform a duty which the law cast upon the consignee

and prohibited the appellant from undertaking. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof": P. R. R. Co. v. Chamberlain, 288 U. S. 333. The evidence is insufficient to permit the jury to find that the presumption of innocence, or, that the parties acted in conformity with law, had been rebutted. The sufficiency of the evidence is a question of law and should have been ruled accordingly.

In the familiar case of a loaned servant, Tarr v. Hecla Coal & Coke Co., 265 Pa. 519 (109 A. 224), at 522, we quoted the following rule which is applicable to this record: "Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him. The test is whether, in the particular service which he is engaged to perform, he continued subject to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired: Puhlman v. Excelsior E. & S. C. Co., 259 Pa. 393, 103 A. 218; 26 Cyc. 1285; Bailey on Personal Injuries (2d ed.), clause 3, section 25; and see Crouse et al. v. Lubin, 260 Pa. 329, 103 A. 725.

This appeal is ruled by Bojarski v. Howlett, Inc., 291 Pa. 485, 140 A. 544, where we considered the case in which a crane, owned by the defendant, together with a foreman and an operator employed by defendant, were loaned to a stevedore engaged in unloading a vessel. Bojarski, the plaintiff, was employed by the stevedore. The stevedore's men signalled to the operator of the crane when necessary to enable him to hoist or lower the loads, as was done by Sordoni's men in the case at bar. Through the negligence of the crane operator, Bojarski was injured. It was held that, while unloading the vessel, the crane and operator were under the

control of the stevedore, and that the defendant, owner of the crane, was therefore not liable. To other cases to the same effect, considered in the opinion in that case, may be added Linstead v. C. & O. R. R., 276 U. S. 28; Persing v. Citizens Traction Co., 294 Pa. 230, 144 A. 97; Milwaukee L. Mfg. Co. v. Point Marion C. Co., 294 Pa. 238, 144 A. 100; Koch v. Matter, 307 Pa. 337, 161 A. 309.

Judgment reversed and here entered for defendant.