Kissell et al., Trustees, et al. *v.* Motor Age Transit Lines, Inc., et al., Appellants.

Argued May 26, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Frank B. Quinn,* with him *English, Quinn, Leemhuis & Plate,* for Motor Age Transit Lines, Inc. and Donald H. Thomas.

*William F. Illig,* with him *Gifford, Graham, MacDonald & Illig,* for Direct Transportation Company.

*T. P. Dunn,* for Lyons Transportation Co., Inc.

*William W. Knox,* with him *Robert J. Firman,* for Ola Hauck and Ferdinand O. Niebauer.

*John B. Brooks and Brooks, Curtze & Silin,* for Priscilla Rebekah Lodge and Lake Side Lodge.

OPINION BY MR. JUSTICE PATTERSON, June 30, 1947:

This is an action in trespass by Trustees of Priscilla Rebekah Lodge No. 266, Trustees of Lake Side Lodge I. O. O. F. No. 1111, Ola Hauck, executrix, substituted for Olin G. Hauck, and Ferdinand O. Niebauer, against Motor Age Transit Lines, Inc., appellant in appeals Nos. 80, 82, 84, 86 and 87, Lyons Transportation Company, Inc., appellant in appeals Nos. 76, 77, 78 and 79, Direct Transportation Company, appellant in appeals Nos. 94, 95, 96 and 97, and Donald H. Thomas, appellant in appeals Nos. 81, 83, 85, 88 and 89, to recover property damage resulting from a fire occasioned by a collision of two tractor-trailers. A jury returned a verdict of $26,-665.46 in favor of appellees and against all appellants. Said verdict represented the stipulated damages. These appeals are from the judgment of the court below dismissing appellants' respective motions for a new trial and for judgment *non obstante veredicto.*

Considering the evidence in a light most favorable to appellees, and giving them the benefit of all reasonable inferences and deductions to be made therefrom (*Ashworth v. Hannum,* 347 Pa. 393, 32 A. 2d 407), it is nevertheless, difficult to state precisely how the collision

occurred. Basically, however, on May 24, 1944, about 2:30 A. M., a tractor, owned by Direct Transportation Company and operated by Robert S. Reed, was proceeding in a westerly direction on United States Route No. 20 toward an intersection with Pennsylvania Route No. 98, in Fairview, Erie County. Said tractor was drawing a trailer owned by Lyons Transportation Company, Inc. This trailer was loaded with castings and the aggregate weight was between 30,000 and 40,000 pounds. At about the same time a tractor-trailer owned by Motor Age Transit Lines, Inc., was being driven by its employee, Donald H. Thomas, northwardly on Route No. 98. The trailer contained inflammable material and the aggregate weight was between 30,000 and 40,000 pounds. The two vehicles collided at or near the aforesaid intersection, and successive explosions followed immediately thereafter. As a result of the explosions, the vehicles burst into flames and the fire spread to and destroyed a building situate on the northwest corner of said intersection, together with all personal property contained in said building. Robert S. Reed, operator of the Direct-Lyons tractor-trailer, was killed.

Thomas, called by appellees as their witness, testified that at about 2:30 A. M. on May 24, 1944, he approached the intersection of Route No. 98 and Route No. 20; that he came to a complete stop; that he then traversed three-quarters of the intersection when he realized he should have turned right on Route No. 20; that he proceeded ahead so that his tractor was about 55 feet north of the north curb line of Route No. 20; that he stopped, looked to the east, the direction from which Direct-Lyons was coming, saw no approaching traffic and began to back his truck when the collision occurred. Immediately after the collision, the rear portion of the Motor Age trailer was 15 to 20 feet north of Route No. 20, the left front and rear wheels thereof being over the west curb line of Route No. 98. The tractor was facing diagonally across said highway with the front

portion thereof near the center. The front of Direct-Lyons' trailer was close to the rear portion of the Motor Age trailer. The Lyons trailer was north of the intersection, facing in a northerly direction and diagonally across Route No. 98.

There is ample evidence to sustain verdicts against all appellants. From the testimony of Thomas, a jury could find that both he and his employer, Motor Age, were negligent in that Thomas failed to use reasonable care in backing onto a through highway (*Gaskill v. Melella*, 144 Pa. Superior Ct. 78, 18 A. 2d 455); in failing to yield the right-of-way to Direct (Cf. *Mellott v. Tuckey*, 350 Pa. 74, 38 A. 2d 40; *Porreca v. North Cleaners and Dyers, Inc.*, 146 Pa. Superior Ct. 504, 23 A. 2d 72); or in failing to keep an adequate lookout for approaching traffic on a through highway. It could also have found that Direct-Lyons were negligent in that Reed failed to observe Motor Age's truck, and negligently crashed into the same. Determination of the issues presented is, therefore, restricted to alleged prejudicial error by the trial judge with regard to the admission or exclusion of certain evidence and in the charge to the jury.

Asserting that Direct was an independent contractor, Lyons contends that the trial judge erred in charging the jury that if it found that Reed, the driver of Direct's tractor, was negligent and his negligence was a contributing cause of the accident, Lyons was liable as a matter of law. Direct contends that the trial judge erred in refusing to strike out testimony regarding skid marks and gouges in the highway, asserting that they were not properly identified. Motor Age and Thomas contend that the trial judge erred in admitting testimony of Ola Hauck and in its charge with regard thereto.

"If specific conduct, in one view, may be construed to be lawful, and in another, to be unlawful, the lawful construction shall be adopted: Rau v. Wilkes-Barre & E. R. R. Co., 311 Pa. 510, 513, 167 A. 230; Morgan v. Heinel Motor, Inc., 329 Pa. 360, 364, 197 A. 920": *Kim-*

*ble v. Wilson,* 352 Pa. 275, 282, 42 A. 2d 526. The shipment by Lyons was an interstate shipment by a public carrier for which Lyons had an Interstate Commerce Commission permit. Direct had no such franchise. Without this permit, the transportation could not legally have been furnished. Lyons could not transfer its responsibility and liability to one who did not have such certificate. To permit this to be done would render ineffective the requirements of the Federal Motor Carrier Act and regulations based thereon. The relationship of independent contractor whereby Direct was to carry the shipment in question and assume responsibility and liability could not validly be created: *Kimble v. Wilson,* supra, 281-282; *Pennsylvania R. R. Co. v. Cameron,* 280 Pa. 458, 466, 124 A. 638. The charge of the trial judge, that if Reed was negligent and that negligence was a contributing cause, then, as a matter of law, Lyons was also negligent, was proper.

Direct's contention that the court below erred in refusing its motion for judgment *non obstante veredicto* for the reason that Lyons alone had the sole power of control over Reed cannot be sustained. "Where . . . it is not entirely clear who was the controlling master of the borrowed employe, and different inferences in that regard can fairly be drawn from the evidence, it is for the jury, not the court, to determine the question of agency": *Dunmire v. Fitzgerald,* 349 Pa. 511, 516, 37 A. 2d 596. ". . . under some circumstances both the lender and the borrower may have control over the servant so as to render each of them liable for his conduct, for he may have been transferred to carry on work which is of mutual interest to them and to effect their common purpose, so that his service to the one does not involve abandonment of his service to the other": *Südekum v. Animal Rescue League of Pittsburgh,* 353 Pa. 408, 414, 45 A. 2d 59. Whether the power of control was sole or joint was to be determined by the jury and the finding

of joint control is amply sustained by the evidence. Lyons secured the shipment and billed the shippers. It gave Reed the trip sheets and bills of lading and set the schedules. Orders on a return trip were received from a Lyons dispatcher in Erie. It filled its own trailers and instructed drivers where and when to leave and to whom to deliver the freight. On the other hand, Reed was paid by Direct. It provided the tractor, the driver, the oil, gas and took care of repairs. It had the power to hire or fire Reed, and when not employed and operating a tractor and trailer, he worked for Direct on other jobs.

The trial judge did not err in refusing to strike out testimony concerning skid marks and gouges in the highway. These marks were newly made and led directly to the Lyons trailer .The inference that they were made by the Direct-Lyons tractor-trailer, coming from the east, is a highly probable one and not mere conjecture. Cf. *Hoover v. Reichard,* 63 Pa. Superior Ct. 517.

It is contended that the testimony of Ola Hauck was clearly incompetent and erroneously admitted. She testified that between 2:30 and 2:45 A. M., on the morning of the accident, she was awakened by a truck which passed her home.[1] Her bedroom was located between 900 and 1,000 feet from the scene of the accident. She heard the meshing of gears and "they made a grinding, meshing noise" as the truck passed her home and this meshing of gears continued until she heard a crash.[2] A mo-

---

[1] (Notes of testimony, p. 279A-280A): "Q. What awakened you? A. I heard a noise of a truck coming down the hill . . . Q. What was the noise you heard? A. It was backfiring of a truck coming down the hill . . . I would call it vibration. It was making a terrific noise coming down the hill and backfiring."

[2] (Notes of testimony, p. 280A): "Q. And what did you hear after that then? A. When they got to the intersection· . . . just south of where I live just a short distance. I wouldn't be able to tell you exactly. Q. Is that Water Street? A. Water Street, where they begin meshing gears and they made a grinding, meshing noise as they went past the house. Q. How long did that meshing of gears that

tion to strike out this testimony for the reason that the witness did not identify the truck was refused. Regarding this testimony, the trial judge stated to the jury: "Mrs. Hauck, the widow of one of the plaintiffs . . . was called. She says she sleeps on the north side of her house, which is 900 to 1000 feet . . . south of Route 20 on Route 98; that she was awakened by a vibration noise of a tractor and trailer proceeding in a northerly direction; that there was a noise from the attempt of the meshing of the brakes which continued from the time she woke up until the point of crash.

"This testimony was taken in connection with the testimony of Mr. Tingley who was just 400 yards, or thereabouts, back of this truck prior to its reaching the intersection. He states the truck was going about 35 or 40 miles an hour but, although the entire testimony is for you, we will mention that he states, 'It was a matter of seconds from the time I saw the tail-light on his outfit until I saw the flash of fire.' . . . So we would say their testimony would be important only in connection with the story of Thomas to the effect that he stopped, proceeded to the center, went through, stopped and was about to back up. We do not say whether or not they are inconsistent but it will be for you to say whether, under the testimony of these witnesses, all of whom are for you as to credibility, the testimony of Thomas and the testimony of Mrs. Hauck could be reconciled on whether or not it indicates something to you in connection with the other facts and circumstances as you have them."

The court *en banc*, dismissing Motor Age's motion for judgment *non obstante veredicto*, said, with regard thereto: "This testimony [of Olga G. Hauck] tends to

---

you heard continue? A. Would judge a few seconds. They were meshing gears until I heard the crash at the intersection of 98 and 20. Q. Do I understand, then, that you heard this meshing of gears sound all the time until you heard the crash? A. Yes, sir, continuously . . . Q. What if any sounds did you hear after this crash? . . . A. I heard one explosion and then the fire siren . . ."

contradict the story of Thomas that after proceeding entirely through the intersection he stopped and was about to back into the highway but had not done so when struck by the other vehicle. Mrs. Hauck could not testify that the truck she heard was that which belonged to Motor Age, but its identification was furnished by Mr. Tingley who testified that he came up behind a Motor Age truck on route No. 98 and followed behind, noting its taillights . . . Tingley's testimony and that of Mrs. Hauck were so corroborative, especially in view of the time element, that the jury was entitled to the information they gave for the purpose of determining the circumstances under which the actual collision took place."

Whether this testimony was properly admitted need not be determined. Certainly it was remote, vague, and unsatisfactory, evidencing only the noise of a passing motor vehicle at 2:30 o'clock in the morning by an interested plaintiff witness, aroused from sleep in an enclosed bedroom a distance of 1000 feet from the scene of the collision. She did not see the motor vehicle from which the noise came and, therefore, was unable to identify it or estimate its speed. *Fitzgerald v. Penn Transit Company,* 353 Pa. 43, 44 A. 2d 288, relied upon by appellants, is not controlling. The subject of the testimony in that case related to speed of a moving object and, in the absence of proof of proper knowledge upon which to base an opinion, admission of the evidence was held to constitute reversible error. Mrs. Houck's testimony represents nothing more than a statement of the fact that she heard the meshing of gears, a collision, and an explosion. Had her testimony been rejected in its entirety there remained abundant evidence from which the jury could have properly concluded that both Thomas and Reed were negligent. Consideration of the entire record compels the conclusion that under all the facts and circumstances the verdict of the jury was proper.

Judgment affirmed.