508 A.2d 308

**Harold D. LYNN and Evelyn Lynn, his wife**

**v.**

**John A. CEPURNEEK, Philip Packard and F.B. Washburn Candy Corporation, a Corp.**

**Appeal of F.B. WASHBURN CANDY CORPORATION, a Corp.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1985.

Filed March 10, 1986.

Reargument Denied May 1, 1986.

380

Nancy Winschel, Pittsburgh, for appellant.

Bernard S. Shire, Monessen, for Lynn, appellees.

Louis C. Long, Pittsburgh, for Cepurneek, appellees.

Before WIEAND, DEL SOLE and HESTER, JJ.

WIEAND, Judge:

In this appeal we are asked to review the trial court's jury instructions as they pertain to the possible existence of a master and servant relationship between a candy manufacturer and the driver of a truck provided by a third party, pursuant to contract, to haul the manufacturer's products.

On August 15, 1979, a truck owned by Philip A. Packard, Inc.,[1] loaded with candy containers, and operated by John Cepurneek, left the travelled portion of Interstate Route 70 in Westmoreland County and collided with a pickup truck parked along the berm. As a result of the ensuing, forced

---

1. This corporation was wholly owned by Philip A. Packard, who was the corporation's chief operating officer. Packard conducted all of the corporation's business during the events which gave rise to the instant litigation. He was named a party defendant in this action, but the corporation was not joined.

movement of the pickup truck, Harold Lynn was pinned and injured. The jury found that Cepurneek had been guilty of negligence and returned a verdict against Cepurneek, Packard and the candy manufacturer, F.B. Washburn Candy Corporation (Washburn).

A principal issue at the time of trial was whether a master and servant relationship existed between Washburn and Cepurneek, the driver. Packard, the owner of the truck, contended that Cepurneek, whom Packard had supplied to drive the truck, was employed by Washburn and subject to Washburn's right of control. Cepurneek testified that on the trip in question he was hauling candy containers which he had picked up in Piqua, Ohio and which he was to deliver to Washburn at its plant in Brockton, Massachusetts. His instructions regarding the source of the cargo and his destination, he said, had been received from Washburn's personnel. Washburn's evidence, on the other hand, was that it had had no right to control the operation of the tractor-trailer unit and had merely paid an agreed sum to Packard to have the candy containers delivered.

The evidence revealed also that the driver of the truck, Cepurneek, had been selected and paid by Packard; that orders for the return trip had been relayed to Cepurneek by Packard; that Packard had obtained insurance for the trip; that the truck had been kept at Packard's place of business between shipments of Washburn's merchandise; and that after the collision which spawned this lawsuit, it had been Packard who delivered Washburn's containers by renting another truck and hiring a new driver. In addition, it was shown that Washburn had not been authorized to fire Cepurneek, had no input regarding the fuel Cepurneek used in the truck or the route that he was to take, and had not discussed with Packard how Cepurneek was to be reimbursed for his expenses.

At the time of the accident, cardboard signs were taped to the sides of the tractor stating: "Leased to F.B. Washburn Candy Company." These signs had been handprinted by Packard's daughter and had been taped to the sides of the

tractor by Packard. Washburn contended that this had been done without its knowledge or consent. There was also evidence, which was not disputed, that neither Packard nor Cepurneek had been licensed to operate in interstate commerce. However, the testimony of Washburn's vice-president, Robert Gilson, was that he had been told by Packard before agreeing to have Packard haul the containers, that he, Packard, had an Interstate Commerce Commission license to carry cargo interstate.

The jury instructions challenged by Washburn on appeal include (1) an instruction that the presence of Washburn's name on the doors of the tractor shifted to Washburn the burden of proving that a master and servant relationship did not exist between Washburn and the driver of Packard's truck; and (2) an instruction that the jury was required to find a relationship between Washburn and the driver which was consistent with regulations of the Interstate Commerce Commission. We conclude that the trial court's jury instructions contained error.

■ "Where the evidence produced by plaintiff, if believed, is sufficient to prove that he was injured by the negligence of one in charge of a business automobile, bearing the trade[ ]name of defendant, displayed thereon in such a manner as trade or business names are usually placed on vehicles used for trade or business purposes, these facts are sufficient (1) to raise the presumption that the car in question was owned by defendant and was being used by the person in charge thereof for defendant's business purposes; and (2) when such presumptions so arise, they entitle plaintiff to have his case submitted to the jury." *Capozi v. Hearst Publishing Co.,* 371 Pa. 503, 511, 92 A.2d 177, 181 (1952), quoting *Hartig v. American Ice Co.,* 290 Pa. 21, 30–31, 137 A. 867, 870 (1927). See also: *Sefton v. Valley Dairy Co.,* 345 Pa. 324, 326, 28 A.2d 313, 314 (1942). This presumption serves at least two purposes: (1) it corrects an imbalance resulting from one party's access to the proof; and (2) proof that defendant's name appears on a commercial vehicle renders it probable that the driver is a

servant of the defendant-owner or lessee; and, therefore, it is both sensible and time saving to assume this fact. See: *McCormick on Evidence* § 343 (3d ed. 1984).

Where the defendant offers evidence which, if believed, tends to rebut the presumed fact, how should the trial court instruct the jury regarding the effect of the presumption? "The problem of the effect of a presumption when met by proof rebutting the presumed fact has literally plagued the courts and legal scholars." *McCormick on Evidence* § 344 (3d ed. 1984).

The most widely followed theory of presumptions in American law has been that they are "like bats of the law flitting in the twilight, but disappearing in the sunshine of actual facts." Put less poetically, under what has become known as the Thayer or "bursting bubble" theory, the only effect of a presumption is to shift the burden of producing evidence with regard to the presumed fact. If that evidence is produced by the adversary, the presumption is spent and disappears. In practical terms, the theory means that, although a presumption is available to permit the party relying upon it to survive a motion for directed verdict at the close of his own case, it has no other value in the trial. The view is derived from Thayer,[2] sanctioned by Wigmore,[3] adopted in the Model Code of Evidence,[4] and seemingly been made a part of the Federal Rules of Evidence.[5] It has been adopted, at least verbally, in countless modern decisions.

The theory is simple to state, and if religiously followed, not at all difficult to apply. The trial judge need only determine that the evidence introduced in rebuttal is sufficient to support a finding contrary to the presumed fact. *If that determination is made, certainly there is no need to instruct the jury with regard to the presumption.* The opponent of the presumption may still

2. Thayer, *Preliminary Treatise on Evidence,* Ch. 8, at 314, 336 (1898).
3. 9 Wigmore, *Evidence* § 2491(2) (Chadbourn rev. 1981).
4. Model Code of Evidence Rule 704(2).
5. Fed.R.Evid. 301.

not be entitled to a directed verdict, but if his motion is denied, the ruling will have nothing to do with the existence of a presumption. *As has been discussed, presumptions are frequently created in instances in which the basic facts raise a natural inference of the presumed fact. This natural inference may be sufficient to take the case to the jury, despite the existence of contrary evidence and despite the resultant destruction of the presumption.*

*McCormick on Evidence* § 344 (3d ed. 1984) (emphasis added) (footnotes partially omitted).

 This is the law in Pennsylvania. A presumption is not evidence and has no weight as such. *Watkins v. Prudential Insurance Co.*, 315 Pa. 497, 503, 173 A. 644, 649, 95 A.L.R. 869 (1934). When evidence is introduced which rebuts the fact presumed, the presumption disappears, having served its function of assigning the initial burden of coming forward with evidence. *Waters v. New Amsterdam Casualty Co.*, 393 Pa. 247, 252, 144 A.2d 354, 356 (1958). See also: 14 P.L.E. *Evidence* § 22 (1959); Annot., 5 A.L.R.3d 19, 39 (1966). After the presumption passes from the picture, only the facts or actual evidence from which the presumption arose remain, free from any artificial effect, to be considered along with the other evidence. *District of Columbia's Appeal*, 343 Pa. 65, 75, 21 A.2d 883, 888–889 (1941). Because "presumptions are frequently created in instances in which the basic facts raise a natural inference of the presumed fact," the jury is entitled to consider such facts. *McCormick on Evidence* § 344 (3d ed. 1984). However, it is "a fallacy to attribute ... an artificial probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with *some* evidence to the contrary." *Waugh v. Commonwealth*, 394 Pa. 166, 174, 146 A.2d 297, 302 (1958) (emphasis in original). It must necessarily follow that it is improper to instruct a jury that a presumption has the effect of shifting the burden of persuasion. *Waters v. New Amsterdam Casualty Co., supra.*

■ The burden of proving the existence of a master and servant relationship in the instant case remained with the plaintiff, and it was error to instruct the jury that Washburn had the burden of proving the non-existence of a master and servant relationship. "Since the presumption is no more than a procedural technique designed for trial convenience to facilitate the production of proof by requiring the party with easier means of access thereto to come forward with evidence, its consequence may be stated as follows: If the defendant fails to introduce evidence negating agency, then the issue is decided in favor of the plaintiff as a matter of legal ruling. If the defendant does offer credible evidence to the contrary the presumption disappears as a rule of law and has no further effect upon the outcome of the case." *Waters v. New Amsterdam Casualty Co., supra,* 393 Pa. at 251–252, 144 A.2d at 356.

In the instant case, the trial court did not allow the presumption to disappear as a rule of law. The court instructed the jurors that "if you believe there was a sign on the tractor trailer at the time of the accident that said 'leased to F.B. Washburn Candy Corporation' then *you must presume* that defendant Cepurneek was acting as defendant Washburn's servant at the time of the accident." [6] The court then proceeded to go even further. "[T]he burden of proof," the court said, "is on the defendant Washburn that defendant Cepurneek was not acting as its servant at the time of the accident."

■ Plaintiff-appellees concede that the trial court's instruction regarding the shifting of the burden of proof was "unfortunate" but argue that other portions of the charge correctly recited the effect of the presumption. We are unable to agree that the prejudice was cured. Indeed, a review of the court's jury instructions in their entirety discloses confusion which would have been avoided if the

---

6. The parties have not argued and we do not decide whether the effect of the presumption is altered where the owner of a commercial vehicle has taped to the vehicle a temporary card containing the name of the lessee without the knowledge or consent of the lessee. But see: *Lindenmuth v. Steffy,* 173 Pa.Super. 509, 98 A.2d 242 (1953).

trial court had refrained from referring to "presumptions" in its effort to explain the relationship between the driver and the shipper.[7] We are constrained to conclude, therefore, that it was prejudicial error for the trial court to instruct the jury that the presence of Washburn's name on the sides of the truck caused the burden of persuasion to shift to Washburn to show that a master and servant relationship had not existed.

■ With respect to the nature of the relationship between Cepurneek and Washburn, the court instructed the jury further as follows:

"If a manufacturer wishes to have his goods shipped interstate, he can do it in either of two ways, legally. First, he can use an independent motor carrier who possesses an I.C.C. franchise to carry goods for him. Sec-

7. Earlier in its charge, the trial court had instructed the jury regarding a contrary presumption as follows:

"Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that presumption is overcome by evidence that the borrower[-]employer in fact assumes control of the employee's manner of performing the work, the servant remains in the service of his original employer."

This presumption, as applied to the facts of the instant case, was in contradiction of the presumption arising from the display of Washburn's corporate name on Packard's truck. The former required the jury to infer that Cepurneek had been Packard's servant, the latter that he had been the servant of Washburn. Where presumptions conflict, they should be treated as if they have disappeared, and the facts upon which they are based should be "weighed as circumstances with all the other facts that may be relevant, giving no effect to the presumptions." *McCormick on Evidence* § 344 (3d ed. 1984) citing Thayer, *Preliminary Treatise on Evidence* 346 (1898). Accord: 9 Wigmore, *Evidence* § 2493 (Chadbourn rev. 1981); Model Code of Evidence Rules 701(3), 704(2). Thus, unless the court determines that one of the conflicting presumptions has been rebutted as a matter of law, neither presumption should be alluded to in the court's charge. It was improvident, therefore, for the trial court in this case to instruct the jury on conflicting presumptions. See: *Smith v. Clark,* 411 Pa. 142, 147, 190 A.2d 441, 443 (1963); *Randolph v. Campbell,* 360 Pa. 453, 458, 62 A.2d 60, 63 (1948); *Grove v. Equitable Life Assurance Society of United States,* 336 Pa. 519, 524, 9 A.2d 723, 725 (1940); *Brown v. Tinneny,* 280 Pa.Super. 512, 517, 421 A.2d 839, 842 (1980).

ond, he can ship the goods himself without an I.C.C. franchise by using his own truck and driver.

"In the present case, neither defendant Cepurneek (the driver), nor defendant Packard (the owner), possessed an I.C.C. franchise....

"... if you find that defendant Cepurneek was not acting as defendant Washburn's servant at the time of this accident, then the parties were acting illegally. In considering this fact *you must follow this legal principle. If specified conduct, in one view, may be construed to be lawful, and in another, to be unlawful, the lawful construction shall be adopted.*" (emphasis added).

There can be no quarrel with the proposition that the jury was entitled to weigh the I.C.C. regulations in determining the identity of Cepurneek's employer. However, it was incorrect, in view of the evidence in this case, to tell the jury that it *must* adopt the construction which was lawful and consistent with I.C.C. regulations. This, in effect, was a mandatory instruction to find that a master and servant relationship had existed between Cepurneek and Washburn. It nullified the other relevant considerations which the court had discussed with the jury during its charge and which the jury should have considered in arriving at its verdict.

In support of its instruction, the trial court cited *Kimble v. Wilson,* 352 Pa. 275, 42 A.2d 526 (1945). In *Kimble,* the trial court had entered a compulsory nonsuit in favor of several defendants and had refused to remove the nonsuit on motion. The owner of the truck, being in the business of renting trucks, had provided both truck and driver to haul steel. The driver had been instructed by a laborer employed by the steel company to take a load of steel to a customer in Chester. While on the way to Chester, a collision had occurred because of the negligence of the truck driver, with resulting injuries to Sara Kimble, the plaintiff-appellant. The steel company contended at trial that it had entered an independent contract with its laborer, who had been engaged in conducting his own trucking

business, to transport steel to Chester and that he, in turn, had contracted independently with the owner of the truck to provide a truck and driver to haul the steel. The Supreme Court reversed the nonsuit, which the trial court had entered for the steel company, and remanded for a new trial. It is in light of these facts and the Supreme Court's ruling that the language in the opinion must be considered.

The extracurricular trucking business conducted by the employee of the steel company was very limited. His Public Utility certificate did not authorize him to go to Chester. Thus, it would have been illegal for the employee, acting as an independent contractor, to haul the company's steel to that destination. Presumably, the Court said, the steel company knew of this limitation on the employee's trucking license. Therefore, the Court said, it would adopt a construction of the facts which rendered the employer's arrangement lawful, i.e., that the driver was not employed by an independent contractor, but by the steel company. From this construction of the facts, the Court concluded, the jury would have been justified in finding that the tractor-trailer and driver, which had been obtained by the employee on behalf of the steel company, were subject to the right of control by the company and that, therefore, a master and servant relationship had existed between the steel company and the driver of the truck. *Id.*, 352 Pa. at 285, 42 A.2d at 530. Because, under these facts, the steel company would have been liable for the negligence of the driver, the Court held that the nonsuit was error. The Court in *Kimble*, however, did not then consider the manner in which a jury should be instructed on the master and servant issue. Consequently, *Kimble* does not support the jury instruction given in the instant case.

In *Kissell v. Motor Age Transit Lines, Inc.*, 357 Pa. 204, 53 A.2d 593 (1947), the Supreme Court did seemingly approve a jury instruction that if specific conduct, in one view, may be construed to be lawful, and in another, to be unlawful, the lawful construction should be adopted. *Id.*, 357 Pa. at 208, 53 A.2d at 595. However, the holding in

*Kissell* was expressly based upon the Court's prior decision in *Rau v. Wilkes-Barre & Eastern R.R. Co.*, 311 Pa. 510, 167 A. 230 (1933), which does not support binding instructions in favor of a relationship consistent with administrative regulations when other facts show that such a construction was not intended.

In *Rau*, the plaintiff's decedent had been killed when struck by the boom of a crane owned by the appellant-railroad company, but which at the time of the accident was being used by Sordoni Construction Co. (Sordoni) to unload limestone from railroad freight cars at Sordoni's construction site. The jury returned a verdict for the plaintiff and against the railroad company, finding that the railroad, rather than Sordoni, had been responsible for the negligent operation of the crane. The railroad company appealed, arguing that the trial court had erred by denying both a request for binding instructions and a motion for judgment n.o.v. The sole issue on appeal was whether the railroad company or Sordoni had been responsible for unloading the freight cars. Evidence produced at trial indicated that it would have been illegal, under federal law, for the railroad to unload Sordoni's limestone. Sordoni offered contradictory testimony from one of its officers. On one occasion the witness testified that he had been informed by the railroad's agent that the railroad "had the crane and could unload" the cargo; on another occasion he said that he had been informed that the railroad company could "arrange *to give [Sordoni] a crane*" to unload the freight cars. Regarding this conflicting evidence, the Court stated:

> [it] must [ ] be considered in light of the presumption that neither [the railroad nor Sordoni] intended to commit a crime ...; and, *if [the evidence] will reasonably bear that interpretation[,]* the law requires that it must be so regarded. *The presumption that they intended to act lawfully and, in fact, did so, may be rebutted, of course, by evidence that is clear;* but it is well settled that if conduct and words, said to be ambiguous, are susceptible of a lawful interpretation and also of one that is unlaw-

ful, the lawful interpretation must be accepted and applied.

*Rau v. Wilkes-Barre & Eastern R.R. Co., supra,* 311 Pa. at 513–514, 167 A. at 232 (citations omitted) (emphasis added). The Court concluded that in light of the prohibitory federal law, and other evidence produced in the case which demonstrated that Sordoni's employees were actively involved in unloading the limestone, the contradictory testimony of Sordoni's officer was "insufficient to support the inference that Sordoni and [the railroad company] intended to, and did, commit a crime by agreeing" that the railroad would unload the cargo. *Id.,* 311 Pa. at 515, 167 A. at 232.

 As *Rau* denotes, a presumption that parties intended to act in conformity with the law is rebuttable, not conclusive. See also: *Constructors' Association of Western Pennsylvania v. Furman,* 165 Pa.Super. 248, 252, 67 A.2d 590, 592 (1949); *Culhane's Estate,* 133 Pa.Super. 339, 353, 2 A.2d 567, 574 (1938), *aff'd,* 334 Pa. 124, 5 A.2d 377 (1939); 29 Am.Jur.2d *Evidence* § 168 (1967); 31A C.J.S. *Evidence* § 134 (1964). It is, in reality, a mere inference which can be rebutted by evidence which demonstrates that the parties intended to conduct the activity in a manner not sanctioned by specific regulation or rule of law. Whether the inference has been overcome by evidence is for the jury to determine. Where there is conflicting evidence, it is error for the trial court to instruct the jurors that they must adopt one construction of the facts rather than another.

 In the instant case, there was substantial, unambiguous evidence which tended to rebut the presumption that the parties had intended a relationship measured by the I.C.C. regulations. As we have already observed, Cepurneek was paid by Packard, who kept, maintained and purchased insurance coverage for the vehicle; and only Packard had the right to hire and fire the driver of the truck. The fact that Packard, after the accident, rented another truck and hired a new driver to deliver Washburn's containers was further evidence that Packard, rather than Washburn, intended to take responsibility for the shipment.

Most significantly for our present purposes, there was testimony that Packard had told Washburn that he had the necessary I.C.C. rights and that Washburn had no reason to believe otherwise. This testimony, if believed, would tend to negative any inference that Washburn intended to create a master and servant relationship in order to effect compliance with the I.C.C. regulations. Under these circumstances, to give what, in effect, was a binding instruction was error.

"Where, as here, it is not entirely clear who was the controlling master ... and different inferences in that regard can fairly be drawn from the evidence, it is for the jury, not the court, to determine agency.... The test is always whether, in the particular service for which the employee was borrowed, he continued [to be] liable to the direction and control of his general employer or became subject to the control of the party to whom he was lent or hired, not merely with regard to the result of the work but as to the way in which it should be performed." *Kimble v. Wilson, supra,* 352 Pa. at 286–287, 42 A.2d at 531, quoting *Dunmire v. Fitzgerald,* 349 Pa. 511, 516, 37 A.2d 596, 599 (1944) (citations omitted). See also: *Siidekum v. Animal Rescue League of Pittsburgh,* 353 Pa. 408, 45 A.2d 59 (1946).

The issues of negligence and the amount of damages sustained have been fairly litigated, and no errors have been alleged with respect thereto. Under these circumstances, the only issue to be determined upon a retrial is whether a master and servant relationship existed between Washburn and Cepurneek.

The judgment against the appellant, F.B. Washburn Candy Corporation, is reversed, and the case is remanded for a new trial limited to the issue of whether John A. Cepurneek was the servant of F.B. Washburn Candy Corporation at the time of the accident causing injury to Harold D. Lynn. Jurisdiction is not retained.